Howard K. **PROL**, Appellee

v.

Lucille **PROL**, Appellant.

Superior Court of Pennsylvania.

Submitted May 14, 2007.

Filed Oct. 18, 2007.

---

Eric D. Strand, West Chester, for appellant.

Jane P. Marks, West Chester, for appellee.

BEFORE: GANTMAN, PANELLA, and JOHNSON, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Lucille Prol ("Wife"), appeals from the order entered in the Ches-

ter County Court of Common Pleas, which granted the petition for special relief of Appellee, Howard K. Prol ("Husband") and ordered the forfeiture of Wife's interest in Husband's Kimberly–Clark pension ("Pension").[1] We reverse and remand with instructions.

¶ 2 The relevant facts and procedural history of this case are as follows. The parties married on October 5, 1968. After nearly thirty years, Husband filed a complaint in divorce and an ancillary claim for equitable distribution of the marital property on May 21, 1998. On March 30, 1999, Wife filed an answer and counter-claim seeking alimony, alimony *pendente lite,* costs and expenses, including medical insurance. Husband, born June 16, 1941, is currently 66 years of age; Wife, born July 31, 1939, is 68 years of age.

■ ¶ 3 In December 2000, the parties appeared before a Master. The Master filed recommendations on March 7, 2001, and Wife filed exceptions. On September 19, 2001, the trial court entered a final decree in divorce, and awarded 58% of the marital assets to Wife and 42% to Husband. Wife's award included 58% of the Pension; counsel for Wife was directed to prepare a Qualified Domestic Relations Order ("QDRO").[2] This Court affirmed the trial court's order on May 2, 2002, our Supreme Court denied allowance of appeal, and the United States Supreme Court denied Wife's petition for writ of *certiorari. Prol v. Prol,* 804 A.2d 69

(Pa.Super.2002), *appeal denied,* 572 Pa. 707, 813 A.2d 843 (2002), *cert. denied,* 539 U.S. 960, 123 S.Ct. 2659, 156 L.Ed.2d 660 (2003).

¶ 4 On April 2, 2003, Husband filed a petition to enforce the equitable distribution order, including the directive for Wife's counsel to prepare a QDRO for the Pension. At a hearing held October 20, 2003, Wife testified that she took no action on the QDRO because she believed the equitable distribution order had been stayed pending her appeals. (N.T., 10/20/03, at 40; R.R. at 123a). Following the hearing, the court ordered Wife, *inter alia,* to prepare the QDRO as follows:

### ORDER

And Now, this 20th day of October, 2003, upon consideration of [Husband's] Petition for Enforcement of the Order in Equitable Distribution dated September, 2001 (which petition was filed April 2, 2003), [Wife's] Answer thereto, and after [hearing] held October 20, 2003, it is hereby ORDERED that:

\* \* \*

3. [Wife] shall hire appropriate counsel to prepare a *bona fide* Qualified Domestic Relations Order to distribute [the Pension] in accordance with the Divorce Decree within 30 days of the date of this Order, and will execute timely any and all documents necessary to effectuate

---

1. The Kimberly–Clark pension is also referred to in the record as the Scott Paper Company pension.

2. A QDRO is a limited exception to the pension plan anti-alienation provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.,* and Internal Revenue Code, 26 U.S.C. § 1 et seq., which otherwise prohibit assignment or alienation of pension benefits. *Berrington v.*

*Berrington,* 534 Pa. 393, 397 n. 2, 633 A.2d 589, 591 n. 2 (1993). "A QDRO ... is a domestic relations order which creates or recognizes the rights of an alternate payee to receive all or a portion of the benefits payable to a participant under the [pension] plan." *Id.* at 397 n. 3, 633 A.2d at 591 n. 3. "To be 'qualified,' the order must contain certain required information and may not alter the amount or form of plan benefits." *Id.*

the division of the parties' respective interests therein.

Failure of [Wife] to have substantially complied with the requirements of this paragraph within 180 days of the date of this Order shall, upon further petition, subject [Wife] to forfeiture of her interest in [the Pension], plus other sanctions as may be appropriate.

* * *

(Trial Court Order, filed 10/21/03, at 2). Wife appealed the court's order on other grounds, and this Court affirmed. *Prol v. Prol,* 880 A.2d 18 (Pa.Super.2005).

¶ 5 On April 19, 2004, Wife's counsel filed a proposed QDRO with the Chester County Prothonotary's Office along with a certificate of service, verifying service of the proposed QDRO on Husband's counsel.[3] The record reflects Husband took no action on the proposed QDRO. At a hearing held July 26, 2004, Wife's counsel stated as follows:

Essentially, there isn't anything for [Wife] to do at this point with regard to the—with regard to the obligations that have been imposed on her through the divorce decree.... We've put together the proposed [QDRO], and haven't heard back from the—haven't heard back from the department—Scott Paper with regard to it, but I filed a copy of it to make sure there was one for the [c]ourt to have on its dockets so it's clear that one's been created.

(N.T., 7/26/04, at 13; R.R. at 306a). No further discussion took place at the hearing regarding the QDRO.

¶ 6 Both parties continued to file petitions to enforce various provisions of the divorce decree. At a hearing held March 21, 2005, the parties placed a settlement agreement on the record. With respect to the QDRO, Husband's counsel stated:

The [Pension] QDRO will be prepared by counsel for [W]ife in the amount of 58 percent to [W]ife, 42 percent to [H]usband. And that would be effective as of the date the final decree of divorce was entered. That percentage will have to apply to the date of the final decree. And counsel for [W]ife will do so as soon as administratively possible.

(N.T., 3/21/05, at 2–3; R.R. at 339a–340a). On April 7, 2005, the trial court entered the agreement as an order. (Trial Court Order, filed 4/7/05, at 1; R.R. at 351). Wife's counsel withdrew her representation in August 2005 without having prepared another QDRO.

¶ 7 Subsequently, Wife submitted a proposed QDRO to the Kimberly–Clark Corporation for approval by the pension administrator. By letter dated May 16, 2006, the pension administrator notified Wife that the proposed QDRO satisfied the administrator's requirements. On June 7, 2006, Wife forwarded the approved QDRO to Husband for review and signature. On June 23, 2006, Husband filed a petition for special relief pursuant to Pennsylvania Rule of Civil Procedure 1920.43, alleging Wife had failed to timely comply with the court's October 21, 2003 order to prepare a *bona fide* QDRO and seeking forfeiture of Wife's 58% share of Pension. On June 26, 2006, Husband's counsel notified Wife that Husband had refused to sign the QDRO due to errors in the proposed QDRO and the extensive time period involved before Husband ever received the document.

¶ 8 On November 6, 2006, the court held a hearing on Husband's petition for special relief and a petition for contempt on unrelated matters. The court ordered forfei-

---

**3.** Wife's proposed QDRO was due by April 18, 2004. However, April 18, 2004 was a Sunday. Thus, Wife timely complied by filing her proposed QDRO on Monday, April 19, 2004.

ture of Wife's 58% interest in the Pension and awarded 100% of the Pension to Husband. On November 29, 2006, Wife timely filed a notice of appeal. On November 30, 2006, the trial court ordered Wife to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Wife timely complied on December 14, 2006. On January 9, 2007, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

¶ 9 On appeal, Wife raises the following issues for our review:

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING THE FORFEITURE OF WIFE'S ENTIRE INTEREST IN HUSBAND'S KIMBERLY–CLARK PENSION PLAN, WHICH WAS AWARDED TO WIFE IN EQUITABLE DISTRIBUTION PURSUANT TO THE PARTIES' DECREE OF DIVORCE, AND IN AWARDING 100% OF THE PENSION TO HUSBAND?

WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN DETERMINING THERE WAS SUFFICIENT EVIDENCE TO FIND THAT WIFE FAILED TO SATISFY HER OBLIGATION TO PREPARE A [QDRO] IN ACCORDANCE WITH THE COURT'S ORDER OF OCTOBER 20, 2003?

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN FINDING THAT WIFE FAILED TO COMPLY WITH THE COURT'S OCTOBER 20, 2003 ORDER DIRECTING WIFE TO PREPARE AND FILE A [QDRO]?

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT APPLIED EQUITABLE PRINCIPLES TO GRANT HUSBAND'S PETITION FOR SPECIAL RELIEF?

(Wife's Brief at 4).

¶ 10 We review a trial court's decision to grant special relief in divorce actions under an abuse of discretion standard as follows:

Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Lachat v. Hinchcliffe,* 769 A.2d 481, 487 (Pa.Super.2001) (citation omitted). "An abuse of discretion exists when the trial court has rendered a decision or a judgment which is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will." *Pratt v. St. Christopher's Hosp.,* 824 A.2d 299, 302 (Pa.Super.2003), *aff'd,* 581 Pa. 524, 866 A.2d 313 (2005).

However, our deference is not uncritical. An order may represent an abuse of discretion if it misapplies the law. It is therefore our responsibility to be sure that in entering its order the . . . court correctly applied the law. An order may also represent an abuse of discretion if it reaches a manifestly unreasonable result. This will be the case if the order is not supported by competent evidence. It is therefore also our responsibility to examine the evidence received by the . . . court to be sure that the . . . court's findings are supported by the evidence. Although we will accept and indeed regard ourselves as bound by the . . . court's appraisal of a [witness'] credibility, we are not obliged

to accept a finding that is not supported by the evidence.

*McCurry v. McCurry,* 279 Pa.Super. 223, 420 A.2d 1113, 1115–16 (1980) (internal citations omitted). When reviewing questions of law, our scope of review is plenary. *Simmons v. Pacor, Inc.,* 543 Pa. 664, 674 A.2d 232 (1996).

¶ 11 For purposes of this appeal, we address Wife's issues together. Wife argues the trial court, in ordering the forfeiture of marital property awarded to her in equitable distribution, essentially modified the parties' final decree of equitable distribution of the marital assets. Wife asserts Pennsylvania law makes no provision for modification of a·final equitable distribution award. Wife also claims the court violated well-settled principles of law and equity that disfavor forfeitures. Wife cites *Johnson v. Johnson,* 864 A.2d 1224 (Pa.Super.2004), *appeal denied,* 583 Pa. 690, 878 A.2d 865 (2005), for the proposition that the court abuses its discretion in granting a party's petition for special relief that results in forfeiture of the value of marital property awarded to the other party in an equitable distribution scheme. Wife contends the court erred when it imposed a forfeiture of that portion of the Pension to which Wife was entitled as a result of her thirty-year marriage to Husband.

¶ 12 Wife insists she complied with the court's directives by filing a proposed QDRO with the Prothonotary and serving it upon Husband within 180 days of the trial court's October 21, 2003 order, and by re-submitting the proposed QDRO at the March 21, 2005 hearing. Wife maintains the alleged errors in the proposed QDRO sent to Husband on June 7, 2006, such as incorrect addresses for Husband and his counsel and an inaccurate benefit accrual date, were *de minimus,* and did not justify Husband's refusal to sign the proposed QDRO or his filing of the petition for special relief without first cooperating to correct the information. Wife also insists Husband suffered no prejudice from any delay in submitting the proposed QDRO, because he did not stand to receive benefits from the Pension prior to reaching retirement age in June 2006. Wife concludes the trial court abused its discretion in imposing the overly harsh sanction of ordering forfeiture of Wife's entire marital interest in the Pension.

¶ 13 In response, Husband argues Wife's continued and blatant disregard for the authority and orders of the court justified the forfeiture. Husband declares Wife failed to comply with the October 20, 2003 equitable distribution order, despite the court's warning that her failure to comply could result in forfeiture. Husband contends Wife was given another opportunity on March 21, 2005, when an agreement was placed on the record that resulted in another court order compelling Wife to prepare a QDRO as soon as administratively possible. Husband maintains Wife's failure to provide a *bona fide* QDRO before June 7, 2006, nearly three years after being warned of the risk of forfeiture, necessitated Husband's petition for special relief to sanction Wife for her failure to comply in a timely manner with the court's directives. Husband alleges Wife's continued delay prevented Husband from accessing the Pension funds. Husband concludes Wife's appeal should be dismissed and the court's decision to grant 100% of the Pension to Husband should be affirmed. Following our careful review of the record and the applicable law, we reject Husband's position and conclude the court's order should be reversed and the case remanded for further proceedings.

¶ 14 The Pennsylvania Divorce Code governs equitable distribution of marital property in pertinent part as follows:

## § 3502. Equitable division of marital property

(a) **General rule**—In an action for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such proportions and in such manner as the court deems just after considering all relevant factors....

\* \* \*

23 Pa.C.S.A. § 3502(a). An avowed objective of the Divorce Code is to effectuate economic justice between the parties who are divorced and insure a fair and just determination and settlement of their property rights. *Isralsky v. Isralsky*, 824 A.2d 1178, 1185 (Pa.Super.2003).

¶ 15 Further, the Divorce Code sets forth the parameters of a court's jurisdiction in divorce matters as follows:

## § 3104. Bases of Jurisdiction

(a) **Jurisdiction**—The courts shall have original jurisdiction in cases of divorce ... and shall determine, in conjunction with any decree granting a divorce ..., the following matters, if raised in the pleadings, and issue appropriate decrees or orders with reference thereto, and may retain continuing jurisdiction thereof:

(1) The determination and disposition of property rights and interests between spouses, including any rights created by any antenuptial, postnuptial or separation agreement and including the partition of property held as tenants by the entireties or otherwise and any accounting between them, and the order of any spousal support, alimony, alimony *pendente lite*, counsel fees or costs authorized by law.

\* \* \*

(4) Any property settlement involving any of the matters set forth in paragraphs (1) ... as submitted by the parties.

(5) Any other matters pertaining to the marriage and divorce ... authorized by law and which fairly and expeditiously may be determined and disposed of in such action.

\* \* \*

23 Pa.C.S.A. § 3104. "[E]quitable distribution of marital property may occur when a final decree in divorce has been entered and the court retains jurisdiction over ancillary matters properly raised by the parties." *Yelenic v. Clark,* 922 A.2d 935, 938 (Pa.Super.2007).

¶ 16 Additionally, "[t]he Divorce Code grants trial courts broad powers to enforce orders of equitable distribution, and provides remedies available against one who fails to comply with a court's order of equitable distribution." *Richardson v. Richardson,* 774 A.2d 1267, 1270 (Pa.Super.2001). The court may impose appropriate sanctions for noncompliance. *Hein v. Hein,* 717 A.2d 1053 (Pa.Super.1998).

¶ 17 "[A] petition for special relief is an appeal to the equitable powers of the trial court." *Johnson, supra.* The court may grant special relief pursuant to Rule 1920.43 of the Pennsylvania Rules of Civil Procedure as follows:

**Rule 1920.43. Special Relief**

(a) At any time after the filing of the complaint, on petition setting forth facts entitling the party to relief, the court may, upon such terms and conditions as it deems just, including the filing of security,

(1) issue preliminary or special injunctions necessary to prevent the re-

moval, disposition, alienation or encumbering of real or personal property in accordance with Rule 1531(a), (c), (d) and (e); or

(2) order the seizure or attachment of real or personal property; or

(3) grant other appropriate relief.

* * *

Pa.R.C.P. 1920.43. "[P]etitions for special relief are not limited to the period when an action is pending, since it is easily conceivable that, after the final disposition of all matters in the divorce action, a party may need the assistance of the court in enforcing some portion of its order." *Romeo v. Romeo,* 417 Pa.Super. 180, 611 A.2d 1325, 1328 (1992) (quoting *Jawork v. Jawork,* 378 Pa.Super. 89, 548 A.2d 290, 292 n. 6 (1988)) (internal quotations omitted). Sanctions, however, must be proportionate to the noncompliance at issue "in light of the positions taken by the parties and the magnitude of the litigation." *Reilly v. Ernst & Young, LLP,* 2007 PA Super 216, ¶ 25, 929 A.2d 1193 (*en banc*) (holding strict scrutiny of appropriateness of sanction is necessary where sanction produces harshest result possible, one that should be imposed only in extreme circumstances).

¶ 18 "Equity, it has been said, abhors a forfeiture and is greatly hesitant to enforce one." *Kalina v. Eckert,* 345 Pa.Super. 220, 497 A.2d 1384, 1385 (1985). *See also Johnson, supra.* "[T]his is when [forfeiture] works a loss that is contrary to equity; not when it works equity. Accordingly, the remedy being dependent upon equitable principles, relief will not be granted unless it is equitable to do so, and the [petitioner is] not barred by [his] own bad faith and bad conduct." *Blue Ridge Metal Mfg. Co. v. Proctor,* 327 Pa. 424, 428, 194 A. 559, 561 (1937). For example, in *Richardson, supra,* the court equitably distributed the marital assets, *including* the wife's award of sixty percent (60%) of the husband's employee pension, which required a QDRO. After the husband's failure to comply with support provisions of the equitable distribution order resulted in Wife having to declare bankruptcy, the trial court found the husband in contempt, and awarded Wife one hundred percent (100%) of the husband's pension to compensate Wife for arrearages due. Husband appealed, claiming the court erred in granting the non-marital portion of his pension to the wife. This Court affirmed the trial court's order, which was designed to compensate the wife for the significant losses she had incurred as a result of the husband's willful contempt of the court's support orders, and the husband's pension funds were the sole asset available to offset Husband's arrearages. *Id.*

¶ 19 Instantly, the court awarded Wife 58% of Husband's Pension as part of the equitable distribution of the marital assets. Wife's counsel was to prepare a *bona fide* QDRO. The court retained jurisdiction over the parties' economic issues related to the equitable distribution of the marital assets. *See Yelenic, supra.* As such, the court had the power to enforce its orders upon Husband's petition for special relief. *See Romeo, supra;* Pa.R.C.P. 1920.43.

¶ 20 Previously, at the October 20, 2003 hearing, the court addressed Wife with respect to the QDRO as follows:

I think if you realize that this is real money to you, that this represents real money to you, if and when you each reach retirement age, you would have acted on this by now. However, under the divorce decree, it is your obligation to hire somebody to prepare a [QDRO] of [the Pension] so that you can receive, upon retirement, your 58 percent share, and, upon retirement, [Husband] can receive his 42 percent share.

I agree with [Husband's counsel] that after a certain period of time, if you haven't done that, then you're going to forfeit your interest in that plan. I'd give it six months, but I also give you the authority, if you wish, if you're uncomfortable and your counsel—drafting a [QDRO] is not for the faint of heart. And if you and your counsel feel you need to obtain a specialist or if [Husband's counsel] feels that she is capable of doing it, and you want to credit the cost, that's something that you all can discuss, but it is your obligation to see that that is done. I'm giving you six months to get it done, but I want you to do it in a shorter period of time than that. If you haven't done it in six months, you forfeit. It's gone. However, you have 30 days in order to hire somebody to do it and to at least get within a close period of time to that—a draft to [Husband's counsel] for her review.

Now, when I say six months forfeit, what I'm talking about is if you haven't gotten a competent [QDRO] drafted, I make no—I would not punish you if [Kimberly–Clark] rejects it and says it needs to be modified. That comes with the territory. And that would not be your fault. I'm not saying that it has to be executed by the [c]ourt within the six months, but merely that a completed, competent Qualified Domestic Relations Order has been making the rounds between counsel within the six month period of time.

(N.T. 10/20/03 at 175–76; R.R. at 258a–259a). Wife's counsel filed a proposed QDRO within six months on April 19, 2004, along with proof of service on Husband. The record reflects Husband took no action at that time. Notwithstanding the filed QDRO, at the March 21, 2005 hearing, the parties agreed Wife would prepare a QDRO "as soon as administratively pos-sible." (*See* N.T. 3/21/05, at 2–3; R.R. at 339a–340a.) Subsequently, Wife sent a prepared QDRO to the Pension administration and, after its approval, to Husband for his signature on June 7, 2006. Husband refused to sign the QDRO, allegedly due to errors in the QDRO and Wife's long delay in producing the QDRO. Instead of contacting Wife or her counsel regarding the alleged errors, Husband filed a petition for special relief seeking Wife's forfeiture of her entire marital interest in the Pension.

¶ 21 In response to Wife's appeal, the court offered the following analysis:

In her Concise Statements of Matters Raised on Appeal, [Wife] asserts that she engaged Peter DiGiovanni, Esquire, to prepare the QDRO. On April 19, 2004, her counsel filed and served the proposed QDRO. At the November, 6, 2006 hearing, [Wife] admitted that the document given to her by Mr. DiGiovanni consisted of a blank form copied from a book. [The court] noted that it did not contain the specific details necessary for an effective Qualified Domestic Relations Order. It was never submitted to [Husband] for his signature and never presented to a Judge for approval. (N.T. 11/6/06, at 28, 31, 43).

[Wife] was represented by another attorney, Laurie Wyche–Abele, at the March 2005 hearing. Rather than engage Ms. Wyche–Abele to draft a proposed QDRO, [Wife], on her own, submitted the 2004 QDRO prepared by Mr. DiGiovanni to the Scott Paper plan administrator. (*Id.* at 32). She waited several months for a reply. The document was eventually returned to her because it did not have [Husband's] signature. [Wife] did not send the proposed QDRO to [Husband's] counsel until the end of May 2006 or the beginning of June 2006. (*Id.* at 33–34).

The evidence shows that the 2004 QDRO contains an incorrect address for [Husband] and for his counsel Jane P. Marks, Esquire. Although it was submitted to the plan administrator in 2005, the QDRO states that [Wife] is represented by Mr. DiGiovanni rather than Ms. Wyche–Abele. Moreover, the document submitted to the plan administrator in 2005 and to [Husband] in 2006, states that the benefits accrue as of April 19, 2004. (N.T. at 44). [Wife] has had ample opportunity and many years to hire appropriate counsel to prepare a *bona fide* [QDRO]. She repeatedly failed to comply with [the court's] Orders. The ruling on November 6, 2006 that [Wife] had forfeited her right to any distribution as Alternate Payee of [Husband's] pension plan was proper and amply supported by the evidence.

(Trial Court Opinion, dated 1/9/07 at 4–5) (emphasis omitted).

■ ¶ 22 The record does not support the court's finding that Wife failed substantially to comply with the October 21, 2003 order, which threatened the forfeiture. To the contrary, the record demonstrates Wife's counsel obeyed the court's order by filing the proposed QDRO in the court with proof of service to Husband on April 19, 2004. If the QDRO failed to meet Husband's approval, he should have addressed the problems with the QDRO at that time. While we do not ignore Wife's failure to take more prompt and effective action to secure her marital interest in the Pension, we observe that the case was also on appeal in one form or another during most of the relevant time period; Wife did try to meet the terms of the court's 2003 order regarding the QDRO; and there was

a change of counsel.[4] Husband provided no evidence that Wife willfully or in bad faith refused to obey the court's orders. *See Reilly, supra; Richardson, supra.*

■ ¶ 23 Ultimately, Wife submitted a pension-approved QDRO to Husband on June 7, 2006, before Husband reached his retirement/pension payout age on June 16, 2006. Husband failed to demonstrate any incurable prejudice, as Husband was not yet entitled to the Pension at that time or during the previous three years. Moreover, Husband refused to cooperate and provide the necessary information to facilitate a corrected QDRO. Instead, he caused further delay and judicial expenditure by filing his petition for special relief.

¶ 24 The divorce in this case was both lengthy and litigious. The parties obviously lack the ability to cooperate. Nevertheless, we can discern no prejudice to Husband caused by Wife's delay in preparing the QDRO. Notwithstanding the court's broad powers to grant special relief and to enforce its own orders, we cannot agree that Wife's actions warrant forfeiture of her entire marital interest in the Pension. *See Johnson, supra; Richardson, supra; Kalina, supra.* The drastic and severe measure of ordering forfeiture of Wife's marital share of the Pension after twenty-nine years of marriage is too harsh and does not serve equity. *See Blue Ridge Metal Mfg. Co., supra.* Therefore, we conclude there are no facts of record to support the court's decision to grant the equitable relief Husband requested. *See Reilly, supra; Richardson, supra; Hein, supra; Kalina, supra.* Accordingly, we reverse and remand for further proceedings, including the reinstatement of Wife's interest in the Pension pursuant to the

---

4. As a general rule, no implication should necessarily be drawn from a change of counsel during proceedings. A change of counsel can result from any one of a number of factors. It should not be highlighted or emphasized by the adverse party so as to automatically suggest the client changing counsel is somehow difficult, dilatory or obstreperous.

terms of the equitable distribution of the marital assets included in the final divorce decree. We further direct the parties to cooperate fully and jointly to facilitate submission of a proper QDRO to ensure appropriate and prompt distribution of the Pension funds.

¶ 25 Order reversed; case remanded. Jurisdiction is relinquished.