J-A05001-19

2019 PA Super 138

| MICHAEL CONWAY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JULIE CONWAY | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF ERIE POLICE RELIEF AND | : | |
| PENSION ASSOCIATION | : | |
| | : | |
| Appellee | | No. 724 WDA 2018 |

Appeal from the Order May 8, 2018
In the Court of Common Pleas of Erie County
Domestic Relations at No(s): 13394-2009

BEFORE: GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

OPINION BY GANTMAN, P.J.E.: FILED APRIL 30, 2019

Appellant, Julie Conway ("Wife"), appeals from the order entered in the Erie County Court of Common Pleas, which denied her motion for entry of a Qualified Domestic Relations Order ("QDRO") reflecting the terms of her Marital Settlement Agreement ("MSA") with Appellee Michael Conway ("Husband"). We reverse and remand with instructions.

The relevant facts and procedural history of this case are as follows. Husband and Wife married on July 12, 1991 and separated in August 2007. During their marriage, Husband was employed as a police officer for the City of Erie. On July 28, 2009, Husband filed a complaint for divorce and equitable

distribution. After lengthy negotiations, the parties executed their MSA on August 19, 2016. The MSA stated, in relevant part:

RETIREMENT ASSETS AND PENSION PLAN

14. The parties agree to an equitable distribution of the following assets as described:

Retirement Assets

a. HUSBAND is a participant in the City of Erie Deferred Compensation Plan administered by VALIC. The parties have agreed that HUSBAND will transfer to WIFE, by Qualified Domestic Relations Order, the sum of Thirty Thousand Dollars ($30,000.00) into a qualified account which WIFE will designate. The draft Order will be prepared by attorney for HUSBAND and approved by attorney for WIFE.

b. HUSBAND, as a City of Erie police officer, is also a participant in the Police Relief and Pension Association Pension Plan. HUSBAND agrees that he will enter into a Qualified Domestic Relations Order memorializing WIFE's entitlement to receive a share of his pension defined by the coverture fraction upon his retirement consistent with the terms recited in the Plan. The Qualified Domestic Relations Order will be prepared by attorney for WIFE and approved by attorney for HUSBAND. The parties have agreed that it will include terms addressing a joint and survivor annuity, and the apportionment of benefits between the parties in the event of HUSBAND's death or disability in connection with his services as a police officer.

(MSA, dated 8/19/16, at 7-8; R.R. at A-10, A-11).

Significantly, at the time the parties executed their MSA, Husband's pension plan ("Plan") contained a provision, stating: "[T]o the extent provided under a 'qualified domestic relations order,' a former spouse of a Participant shall be treated as the spouse or surviving spouse for all purposes under the

- 2 -

Plan." (Official City Ordinance No. 04-2011, Section 147.11(f)(2), at 36; R.R. at A-54). On August 22, 2016, the court entered a divorce decree incorporating the parties' MSA. Effective August 23, 2016, four days after Husband and Wife entered the MSA and one day after entry of their divorce decree, the City amended the relevant provision of the Plan to read: "[A] former spouse of a Participant shall not be treated as the spouse or surviving spouse for any purposes under the Plan." (Official City Ordinance No. 23-2016, amendment to Section 147.11(f)(2), at 2; R.R. at A-59).

On August 29, 2016, Wife submitted a proposed QDRO to the Plan administrator reflecting the terms of the parties' MSA. Representatives of the Plan subsequently denied Wife's proposed QDRO, due to the amended City ordinance. After numerous exchanges, Wife's counsel and representatives of the Plan could not agree on language of the QDRO.[1] Consequently, on December 1, 2017, Wife filed a motion for entry of a QDRO reflecting the terms of her MSA with Husband.

The court held a hearing on Wife's motion on April 3, 2018. Following the submission of post-hearing briefs, the court denied Wife's motion on May 8, 2018, stating:

> It is undisputed that [Wife's] counsel forwarded the parties'
> QDRO to the Police Pension Association subsequent to the
> amendment to Section 147.11(f)(2) of the City of Erie

_____

[1] Wife filed a motion on September 11, 2017, to join Appellee, the City of Erie Police Relief and Pension Association ("Association"), as an additional defendant in this matter. The court granted Wife's motion that day.

Codified Ordinance, which eliminated the prior provision that treated a former spouse of a participant as a spouse or surviving spouse. As the amended section took effect prior to the Association's receipt of the QDRO, [Wife's] QDRO is not enforceable as written and [Wife's] Motion must be denied.

(Order, filed May 8, 2018). In essence, the court decided the operative date for any QDRO was the date the Association received the proposed QDRO.

Wife timely filed a notice of appeal on May 18, 2018.[2] That day, the court ordered Wife to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Wife timely filed on May 31,

_____

[2] No party formally objects to this Court's jurisdiction over the appeal, but the Association "questions" whether the appeal should be in the Commonwealth Court because the Association is a state agency and the case involves a city ordinance. See 42 Pa.C.S.A. § 762 (discussing appeals within Commonwealth's exclusive jurisdiction). Wife's issue on appeal asks us to decide the operative date for the QDRO. This case does not involve the Association's rights or interpretation of the ordinance. The Association is merely a tangential defendant in these proceedings more in the nature of an interpleader. Thus, we will retain jurisdiction over the appeal and decline to transfer it to the Commonwealth Court. See Gordon v. Philadelphia County Democratic Executive Committee, 80 A.3d 464 (Pa.Super. 2013) (holding Superior Court had jurisdiction over appeal involving political party executive committee election rule, where issue on appeal did not require Superior Court to apply, interpret, or enforce Election Code; moreover, appellees did not object to Superior Court's jurisdiction and retaining jurisdiction served judicial economy). See also 42 Pa.C.S.A. § 704(a) (stating: "(a) General rule.—The failure of an appellee to file an objection to the jurisdiction of an appellate court within such time as may be specified by general rule, shall, unless the appellate court otherwise orders, operate to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of this title, or of any general rule adopted pursuant to section 503 (relating to reassignment of matters), vesting jurisdiction of such appeal in another appellate court").

2018.[3]

Wife raises one issue for our review:

DID THE TRIAL COURT ERR BY FAILING TO ENTER THE QUALIFIED DOMESTIC RELATIONS ORDER SUBMITTED BY [WIFE] TO SECURE HER POST-DIVORCE RIGHTS TO [HUSBAND'S] ERIE POLICE PENSION IN THAT THE MARITAL SETTLEMENT AGREEMENT AND DIVORCE DECREE WERE BOTH IN EFFECT PRIOR TO THE AMENDMENT OF THE CITY POLICE PENSION ORDINANCE ELIMINATING CERTAIN RIGHTS OF FORMER SPOUSES?

(Wife's Brief at 4).

Our standard and scope of review in this case are as follows:

We review a trial court's decision to grant [or deny] special relief in divorce actions under an abuse of discretion standard as follows:

Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

An abuse of discretion exists when the trial court has rendered a decision or a judgment which is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will.

However, our deference is not uncritical. An order may represent an abuse of discretion if it misapplies the law. It is therefore our responsibility to be sure that in entering its order the...court correctly applied

_____

[3] On August 11, 2018, Husband died while on duty. Husband's estate has not filed a brief in this matter.

the law. An order may also represent an abuse of discretion if it reaches a manifestly unreasonable result. This will be the case if the order is not supported by competent evidence. It is therefore also our responsibility to examine the evidence received by the...court to be sure that the...court's findings are supported by the evidence. Although we will accept and indeed regard ourselves as bound by the...court's appraisal of a witness' credibility, we are not obliged to accept a finding that is not supported by the evidence.

When reviewing questions of law, our scope of review is plenary.

Prol v. Prol, 935 A.2d 547, 551-52 (Pa.Super. 2007) (internal citations and quotation marks omitted).

Wife argues the parties' MSA and divorce decree secured her rights to share in Husband's pension benefits. Wife asserts the parties intended for Wife to receive the benefits of a spouse or surviving spouse, as set forth in the Plan, when Husband and Wife entered into the MSA. Wife contends the controlling date in this matter is the date the parties entered into the MSA, which occurred prior to the effective date of the amendment to the City ordinance. Wife emphasizes the MSA settled her marital rights to share in Husband's benefits; the QDRO is the vehicle to recognize and to implement those rights through a method of payment. Wife contends the Association's denial of her proposed QDRO constitutes an unlawful ex post facto application of the amended ordinance. Wife insists entry of the MSA as incorporated in the divorce decree serves as an enforceable court order, so the Association has no authority to invoke the later amended ordinance as a defense for

denial. Wife claims the parties had no obligation to consult with or receive approval from the Association as a prerequisite to her rights under the city ordinance. Wife submits she is simply asking the Association to honor the ordinance in effect when the parties entered into the MSA. Wife concludes the court improperly denied her motion for special relief, in the form of a QDRO reflecting and enforcing the terms of the parties' MSA that predated the amendment to the ordinance, and this Court must reverse. We agree.

To begin:

> In Pennsylvania, we enforce property settlement agreements between husband and wife in accordance with the same rules applying to contract interpretation. A court may construe or interpret a [marital settlement agreement] as it would a contract, but it has neither the power nor the authority to modify or vary the [agreement] unless there has been fraud, accident or mistake.
>
> It is well-established that the paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. When the trier of fact has determined the intent of the parties to a contract, an appellate court will defer to that determination if it is supported by the evidence.

> Further, where...the words of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the express language of the agreement itself.

Bianchi v. Bianchi, 859 A.2d 511, 515 (Pa.Super. 2004) (internal citations and quotation marks omitted).

A QDRO is an order "which creates or recognizes the rights of an alternate payee to receive all or a portion of the benefits payable to a

participant under [a pension] plan. To be 'qualified,' the order must contain certain required information and may not alter the amount or form of plan benefits." Smith v. Smith, 595 Pa. 80, 85 n.3, 938 A.2d 246, 248 n.3 (2007) (emphasis added). In cases where parties have entered a marital settlement agreement, a QDRO merely implements substantive rights already created by the settlement agreement. Grieve v. Mankey, 679 A.2d 814 (Pa.Super. 1996), appeal denied, 546 Pa. 681, 686 A.2d 1311 (1996) (holding order directing QDRO did not affect either party's substantive rights but was simply procedural mechanism to effectuate pension entitlement as agreed to by parties).

Additionally, "[a]n avowed objective of the Divorce Code is to effectuate economic justice between the parties who are divorced and insure a fair and just determination and settlement of their property rights." Prol, supra at 553 (reversing trial court's decision that wife forfeited her marital share of husband's pension for failure to submit QDRO to husband's counsel in timely manner; drastic and severe measure of ordering forfeiture of wife's marital share of pension after 29 years of marriage is too harsh and does not serve equity; remanding for reinstatement of wife's interest in husband's pension pursuant to terms of equitable distribution of marital assets included in final divorce decree). See also 23 Pa.C.S.A. § 3102(a)(6) (providing that it is the policy of this Commonwealth to effectuate economic justice between divorced parties).

Instantly, the parties executed their MSA on August 19, 2016. The record makes clear the parties intended for Wife to receive pension benefits as a spouse or surviving spouse under the Plan. The former version of the ordinance, in effect when the parties executed the MSA, permitted this distribution. Moreover, nothing about the MSA was ambiguous concerning the parties' intent in this regard. See Bianchi, supra. Three days later, on August 22, 2016, the court entered a divorce decree incorporating the parties' MSA, also while the prior ordinance was still in effect. The amended ordinance took effect the next day, on August 23, 2016. Wife submitted her proposed QDRO to the Plan administrator on August 29, 2016. The Plan rejected the proposed QDRO, based on the amended ordinance, and denied her any benefits.

Notwithstanding the clear terms of the parties' MSA and the divorce decree, as well as the Plan distribution under the ordinance in effect at the time of the MSA, the trial court inexplicably decided the date the Association received Wife's proposed QDRO controlled this matter. Yet, neither the trial court nor the Association cite any law to support this position. Therefore, use of the date the Association received Wife's QDRO is completely arbitrary and defeats Wife's rights under the MSA, which existed prior to the amendment to the ordinance. Wife's proposed QDRO serves only to recognize and implement her settled rights, secured under the MSA, which became an enforceable court order upon entry of the divorce decree; the QDRO did not

create new substantive rights.[4]  See Grieve, supra.  Thus, we hold the controlling date in this matter is the date the parties entered the MSA, which pre-dated the amendment to the ordinance.  To hold otherwise would deny Wife the benefit she bargained for and work an unfair and severe injustice concerning the parties' settlement of their existing rights.  See Prol, supra.  Further, the trial court's order denying Wife her agreed-upon marital share of Husband's pension after 25 years of marriage is contrary to the goal of achieving economic justice, particularly where Husband is now deceased and the parties cannot renegotiate the MSA.  See 23 Pa.C.S.A. § 3102(a)(6); Prol, supra.  Under these circumstances, the record does not support the trial court's decision to deny Wife's requested relief.  See id.  Accordingly, we reverse and remand for entry of a QDRO reflecting the terms of the parties' MSA.

Order reversed; case remanded with instructions.  Jurisdiction is relinquished.

---

[4] The Association's reliance on Maloney v. Maloney, 754 A.2d 36 (Pa.Cmwlth. 2000), appeal denied, 565 Pa. 678, 775 A.2d 810 (2001), is misplaced.  In that case, the Commonwealth Court reversed a trial court's order directing the Borough of Yeadon to pay survivor benefits to an ex-spouse when survivor benefits were not provided for in the relevant ordinance and not previously contracted for by the parties.  Maloney is inapposite.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  4/30/2019