J-A22001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ROSCOE BRIGHT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WENDY BRIGHT | : | No. 206 WDA 2023 |

Appeal from the Order Entered February 10, 2023
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD 91-003774-002

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY BOWES, J.:                **FILED:  November 22, 2023**

Roscoe Bright ("Husband") appeals the order granting a motion to enforce equitable distribution filed by Wendy Bright ("Wife").  We affirm.

This matter concerns Husband's compliance with an equitable distribution order.  Husband and Wife were married in 1992.  Before and during the marriage, Husband bought educational savings bonds from his employer.  In 1995, he purchased the marital residence in Elizabeth, Pennsylvania, which was mortgaged and titled in his name only.  The pair separated in 2007, and Husband filed a divorce complaint in 2008.  Wife remained in the residence and Husband continued to pay the mortgage at all relevant times after they separated.

Litigation concerning the divorce and equitable distribution was protracted.  The case was referred to a hearing officer in 2011 to consider distribution of, *inter alia*, Husband's thrift savings plan, the marital residence,

and the savings bonds. Both Husband and Wife advocated in favor of receiving the residence in equitable distribution. Additionally, at the time of the proceedings, neither party could locate the savings bonds.

The hearing officer entered a report and recommendation on March 9, 2011. In pertinent part, it recommended that Wife, as caretaker of the children, retain the house until March 31, 2013, and that Husband continue paying the mortgage and insurance expenses. *See* Master's Report and Recommendation, 4/9/11, at 4. The recommendation also called for Wife to have the option to refinance the home into her individual name at the end of that period, or else Husband could resume exclusive occupancy by paying Wife 66.6% of the equity value. *Id*. In the event Husband decided that he did not want to keep the marital residence, the hearing officer recommended that Husband continue to pay the mortgage until the property was sold, but that he would be "compensated dollar for dollar any amounts paid after March 31, 2013 from the net proceeds received." *Id*.

Both Husband and Wife filed exceptions to the recommendation. Critically, Husband's exceptions did not challenge the suggestion that he only receive credit for mortgage payments if he sold the house to a third-party. Ultimately, after over two years of additional litigation and filings, the trial court entered a final order concerning the parties' economic claims on June 28, 2013 ("Final Order"). The court subsequently entered a divorce decree several months later on September 13, 2013, thus making the Final Order appealable.

Relevant to this appeal, paragraph 10 of the Final Order addressed disposition of the marital residence, which was largely consistent with the recommendation of the hearing officer, and which gave Wife the option to purchase the property. It also provided for reimbursement of any mortgage payments made by Husband after March 31, 2013, under certain conditions, including in the event Wife chose to purchase the home or Husband opted to sell it to a third-party. That paragraph stated in full as follows:

> Wife shall be granted the option of purchasing [the marital residence] from Husband for the sum of the balance of the mortgage owed to BB&T Home plus any applicable mortgage payments made by Husband after March 31, 2013 for a period not to exceed thirty . . . days from the date of the transfer of funds from Husband's Thrift Savings Plan that is referenced in Paragraph 2 of the within order of court.[1] Should Wife purchase [the marital residence] within the time period set forth above, Husband shall sign over to Wife a deed for [the marital residence]. If Wife does not purchase [the marital residence] within the time period set forth above, Husband shall retain the option to resume and retain sole ownership and exclusive occupancy of [the marital residence] upon payment of the sum of $8,777.22 to Wife. If Wife does not purchase [the marital residence] within the time period set forth above, Wife must vacate [the marital residence] within thirty . . . days of Husband's payment of $8,776.22. If Husband does not elect to resume sole ownership of [the marital residence], the property shall be listed for sale to a third party and the parties shall split the remaining net proceeds (after all costs of sale and reimbursement to Husband for any applicable mortgage, real estate taxes and insurance payments made after March 31, 2013) at a division of 66.6% to Wife and 33.4% to Husband. Husband

---

[1] Paragraph 2 of the Final Order directed that, among other things, Husband pay $196,925 "plus the sum of the applicable rate of return that was earned on the sum . . . from March 7, 2011 through the date of the issuance of an applicable Qualified Domestic Relations Order (QDRO)" to Wife within thirty days of the issuance of the QDRO. Final Order, 6/28/13, ¶ 2.

shall remain responsible for payment of existing mortgage on [the marital residence] until a transfer of ownership occurs.

Final Order, 6/28/13, at ¶ 10. As such, the Final Order contemplated that in the event Wife elected to purchase the house, she would be required to reimburse Husband for any mortgage payments he made after March 31, 2013.

Additionally, paragraph twelve of the Final Order addressed the missing educational savings bonds. Since the bonds could not be located, it provided that if they were lost or stolen, the parties "will make the necessary arrangement to have the bonds replaced and the value of the bonds shall be split 66.6% to [Wife] and 33.3% to [Husband]." *Id*. at ¶ 12. The Final Order also stated that if either party redeemed the bonds, "the party responsible for such redemption shall reimburse the other party the appropriate percentage (which would be 66.6% to [Wife] and 33.3% to [Husband].)" *Id*. Neither party filed a direct appeal from the Final Order or divorce decree.

A Qualified Domestic Relations Order (QDRO), as mandated by the Final Order, was subsequently entered on December 5, 2013; however, Husband was not able to distribute to Wife the required amounts from his thrift savings plan until approximately March 25, 2014. By letter dated April 21, 2014, Wife informed Husband through counsel that she elected not to purchase the residence and requested distribution of her portion of the savings bonds. Husband's counsel responded in writing a month later, enclosing a check to Wife in the amount of $8,776.22 so that he could retain the martial residence in accordance with the Final Order. The letter also indicated that Husband

was refusing to provide any payment arising from the savings bonds for several reasons, one of which was because "the rental value of the property . . . to [Wife] – from the date of termination of alimony [on March 31, 2013] to the date that she is expected to vacate the premises – far exceeds two thirds (2/3) of the value of the savings bonds."   Motion to Enforce Equitable Distribution Order, 1/11/21, at Exhibit B.  Wife moved out of the residence on or about June 7, 2014, which was within thirty days of receiving the check from Husband and therefore in accordance with the Final Order.  It was not disputed that Husband had paid the mortgage and real estate taxes for the residence from March 31, 2013, through the time Wife moved out in 2014.

Approximately six years later, in June of 2020, Wife presented to the trial court a motion to enforce the Final Order, asserting that Husband had never paid her the 66.6% of the value of the savings bonds to which she was entitled.[2]  The matter was referred to a hearing officer, who on November 8, 2021, issued a report and recommendation to grant Wife's motion and award her $2,000 in counsel fees.  Both parties filed exceptions.  Wife claimed the attorney fee award was insufficient.  Husband argued that any payment he was required to make to Wife arising from the savings bonds should be offset by the rental value of the martial residence from March 31, 2013, to April of

_____

[2] The record reflects that although this motion was presented to the trial court in 2020, it was not filed until January 11, 2021.

2014, when she vacated the residence. The trial court[3] ultimately entered an order denying both parties' exceptions and adopting as final the recommendations made by the hearing officer in the report from November of 2021. Husband's timely appeal followed.

Both Husband and the trial court complied with Pa.R.A.P. 1925. In its Rule 1925(a) opinion, the court asserted that Husband was collaterally estopped from arguing for the offset. Husband raises the following two issues on appeal:

I.    Did the trial court err by failing to grant a credit equivalent to the fair rental value of the parties' former marital residence (for the fourteen[-]month period that appellee Wife retained exclusive use and possession of said property after her award of alimony had ended) to appellant Husband when ordering appellant Husband to transfer 66.6% of the savings bonds acquired during their marriage to appellee Wife?

II.   Did the trial court err by failing to bar and dismiss appellee Wife's motion to enforce equitable distribution order in accordance with the doctrine of laches?

Husband's brief at 4 (cleaned up).

We begin with the legal tenets pertinent to our review. Wife's motion to enforce, which was filed after entry of the final divorce decree, constitutes a petition for special relief. *See*, *e.g.*, *Prol v. Prol*, 935 A.2d 547, 555 (Pa.Super. 2007) (stating that the trial court's power to enforce an order concerning equitable distribution arises from Pa.R.C.P. 1920.43, concerning

---

[3] The trial judge who heard and decided Wife's motion to enforce was different than the judge who entered to Final Order in 2013.

petitions for special relief). Appellate courts "review a trial court's decision to grant special relief in divorce actions under an abuse of discretion standard[.]" **Conway v. Conway**, 209 A.3d 367, 371 (Pa.Super. 2019) (citation omitted). This Court has stated that "the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure." **Id**. (citation omitted).

As collateral estoppel formed the basis of the trial court's decision, we examine the fundamentals of that doctrine. Collateral estoppel "operates to prevent a question of law or issue of fact which has once been litigated and fully determined in a court of competent jurisdiction from being relitigated in a subsequent suit." **Vignola v. Vignola**, 39 A.3d 390, 393 (Pa.Super. 2012) (citation omitted). It applies when the following elements are met:

> (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

**Id**. (citation omitted).

In his first issue, Husband asserts that any payment he is required to make to Wife should have been offset by the value of rent for the marital residence for the fourteen-month period she retained exclusive jurisdiction after March 31, 2013. **See** Husband's brief at 18-24. He cites caselaw for the

general proposition that "a dispossessed party spouse is entitled to a credit against the spouse in exclusive possession for the fair rental value of the marital residence." *Id*. at 20-21 (citing ***Mundy v. Mundy***, 151 A.3d 230 (Pa.Super. 2016)). Husband believes that both the hearing officer and trial court appeared to conflate his claim requesting an offset for rental value with one asking for reimbursement of mortgage payments made during the same period. *Id*. Husband also contests the court's finding that he is collaterally estopped from arguing this position, maintaining that the issue was never considered by the court before nor addressed in a final judgment on the merits, and that he did not have a full and fair opportunity to litigate the issue. *Id*. at 23-24.

In its opinion, the trial court determined that Husband was collaterally estopped from asserting the claim for rental value. ***See*** Trial Court Opinion, 4/18/23, at 4-5. Particularly, it reasoned as follows:

> It is clear from the . . . Final Order . . . that the issue of compensation for Husband's mortgage payments was considered and contemplated by the [c]ourt. Husband was to receive compensation for his mortgage payments if (1) Wife elected to purchase the property, or (2) the residence was sold to a third-party. Instead, Husband resumed sole ownership of the marital residence after Wife elected not to purchase it. The Final Order issued by [the court] expressly states that "Husband shall remain responsible for payment of existing mortgage on the real property . . . until a transfer of ownership occurs." Accordingly, Husband was not entitled to compensation for the mortgage payments under paragraph 10 of the Final Order . . . .
>
> [Additionally, the Final Order] was a final judgment on the merits. Husband had a full and fair opportunity to litigate the issue in front of [the hearing officer] on March 9, 2011, and in the extensive

- 8 -

subsequent litigation through exceptions and motions to reconsider. Husband never appealed the Final Order . . . . Accordingly, the doctrine of collateral estoppel precludes relitigati[ng] the disposition of the marital property.

*Id*. at 5 (cleaned up).

In the same vein, Wife contends that collateral estoppel bars Husband from advancing this issue. *See* Wife's brief at 11. She avers that Husband is attempting to re-litigate the underlying equitable distribution, but he cannot do so since he failed to appeal the Final Order entered in 2013. *Id*. at 9, 15. Like Husband, Wife also cites *Mundy*, but for the proposition that any order granting a dispossessed party fair market rental value for a residence should be made as part of the equitable distribution process, which the court chose not to do. *Id*. at 12 (citing *Mundy*, *supra* at 238). She additionally argues that regardless of whether Husband's claim is couched as a request for rental value credit or reimbursement of mortgage payments, it is irrelevant because the Final Order only permitted reimbursement of any sort to Husband if Wife purchased the property or it was sold to a third-party, neither of which occurred. *Id*. at 9.

Upon review of the certified record and the applicable law, we discern no abuse of discretion with the trial court's decision to grant Wife's motion to enforce and deny Husband's exception as to this issue. However, we disagree with both the trial court and Wife that the doctrine of collateral estoppel is

applicable in this case.[4] The first prong of that doctrine requires that an issue **in a later case** be identical to that decided in the first case. **See Vignola**, **supra** at 393 (emphasis added). The element concerning a subsequent litigation is not met here. Wife's motion to enforce was filed within the same action as the underlying divorce and equitable distribution proceedings, and therefore does not involve an ensuing case.

Rather, we find that Husband's issue invokes the law of the case doctrine, which we have described thusly:

> The law of the case doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter. The various rules which make up the law of the case doctrine serve not only to promote the goal of judicial economy but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end.

**Neidert v. Charlie**, 143 A.3d 384, 390-91 (Pa.Super. 2016) (cleaned up). This rule "is one largely of convenience and public policy, both of which are served by stability in judicial decisions, and it must be accommodated to the needs of justice by the discriminating exercise of judicial power." **Id**. at 391.

---

[4] We nonetheless bear in mind the well-established principle that "an appellate court may affirm a valid judgment based on any reason appearing as of record, regardless of whether it is raised by appellee." **Heim v. Medical Care Availability and Reduction of Error Fund**, 23 A.3d 506, 511 (Pa. 2011) (citation omitted).

We further note that courts have declined to apply the doctrine in certain situations that are not present in the current case, including the modification of an existing order or a substantial change in circumstances. *See*, *e.g.*, *Mackay v. Mackay*, 984 A.2d 529, 541 (Pa.Super. 2009) (finding the doctrine inapposite when trial court addresses a petition for modification of child support based upon material and substantial change in circumstances); *see also Neidert*, *supra* at 391 (stating that "a later motion should not be entertained or granted when a motion of the same kind has previously been denied, unless intervening changes in the facts or the law clearly warrant a new look at the question").

In granting Wife's motion to enforce and denying Husband's request to offset rental value, the trial court served the purposes of law of the case. First, the trial court judge was different than the one who entered the Final Order in 2013, and therefore had a duty to refrain from reopening questions decided within that order absent material and substantial changes in circumstances. *Id*. From our review of the record, it does not appear that there was any material or substantial change in circumstances concerning the equitable distribution between entry of the Final Order in 2013 and the time Wife presented her motion to enforce in 2020. By deciding to keep the house, Husband's actions fell within the purview of the Final Order. As such, there was no compelling reason for the trial court to modify or overturn this ruling from the prior judge.

Next, the Final Order clearly articulated that Husband was only entitled to reimbursement of his mortgage payments made after March 31, 2013 under two circumstances: if Wife purchased the home or if Husband sold it to a third-party. Neither the hearing officer's recommendation from 2011 nor the Final Order gave Husband a right to reimbursement in the event that he kept the house, which is what he did here. As such, the issue concerning any sort of reimbursement or offset for Husband was fully addressed in a final, appealable order.[5] Additionally, although Husband filed exceptions to the hearing officer's recommendation in 2011, he did **not** raise any challenge in the form of either a mortgage reimbursement or rent offset. Likewise, he never appealed nor requested reconsideration of the Final Order as to this issue. Hence, the limited circumstances upon which Husband would be entitled to an offset is the law of the case.

At the time Husband withheld payment from Wife with respect to the savings bonds in May of 2014, he was not in compliance with the Final Order. Under the law of the case doctrine, Husband cannot now re-litigate this issue in response to Wife's motion to enforce the equitable distribution order, which Husband concededly disregarded when he failed to redeem the educational

_____

[5] Although Husband takes significant effort to distinguish his claim for rent offset for payments made while Wife remained in exclusive possession of the residence from mortgage reimbursement from the same time period, we find that the claims are, in effect, synonymous. *See Mundy v. Mundy*, 151 A.3d 230, 239 (Pa.Super. 2016) (stating that mortgage payments made by the wife "were tantamount to rent owed to [the h]usband for [the wife's] exclusive use of his property").

savings bonds. To permit this behavior would serve to disrupt the settled expectations of the parties, especially Wife, and destroy the uniformity of decisions and consistency in this case. *See Neidert*, *supra* at 391. As both the trial court and Wife posited, it would allow Husband to relitigate an issue addressed during equitable distribution nearly a decade ago. Therefore, Husband is not entitled to relief on this claim.[6]

Husband next contends that the court erred when it granted Wife's motion to enforce equitable distribution in spite of his position that the doctrine of laches precludes relief. *See* Husband's brief at 24-27. He highlights the fact that it took six years from entry of the Final Order for Wife to file her motion. *Id*. at 26. Husband asserts that he was prejudiced by Wife's delay because the court ultimately granted her motion, yet failed to give him the offset discussed above at length. *Id*. at 26-27.

"The question of whether laches applies is a question of law; thus, we are not bound by the trial court's decision on the issue." *Fulton v. Fulton*, 106 A.3d 127, 131 (Pa.Super. 2014) (citation omitted). This Court has stated the following concerning the doctrine:

_____

[6] Based on our decision, we find Husband's reliance on *Mundy* unavailing. Although the *Mundy* Court articulated a general proposition that a dispossessed spouse is entitled to credit against a spouse in exclusive possession, that case involved a direct appeal from an equitable distribution order. *Id*. at 235. The appellant in *Mundy* therefore challenged the order in question at the first available opportunity, not years later in response to an unrelated motion to enforce that was necessitated by the appellant's failure to comply with the order. Therefore, unlike the case at bar, *Mundy* did not implicate the law of case doctrine.

- 13 -

Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay. Moreover, the question of laches is factual and is determined by examining the circumstances of each case.

*Id*. (citation omitted). Further, "[u]nlike the application of the statute of limitations, exercise of the doctrine of laches does not depend on a mechanical passage of time." *Id*. (citation omitted).

In rejecting this claim, the trial court determined that Husband admittedly failed to abide by the terms of the Final Order by neglecting to distribute to Wife funds representing her share of the value of the educational savings bonds. *See* Trial Court Opinion, 4/18/23, at 5-6. It also found that the passage of time militated in favor of Wife, not Husband, in light of the fact that Husband did not comply with the Final Order or otherwise take the steps to redeem the bonds. *Id*. at 6. For her part, Wife avers that she exercised due diligence, despite the six-year delay in filing her motion, because there was no change in circumstances to trigger any action, such as a sale or redemption of the savings bonds in question. *See* Wife's brief at 16-17.

We find no error with the court's refusal to apply the doctrine of laches in the context of Wife's motion to enforce the equitable distribution. Notably, Husband concedes in his brief that he suffered "little or no prejudice from the long delay" of the filing of the motion itself. Husband's brief at 27. Rather, he contends that prejudice arose because the court denied his request for an

offset in the process of granting Wife's motion. Since no purported prejudice "resul[ted] from the delay," Husband has failed to show that laches applied. *Fulton*, *supra* at 131. Likewise, he has not demonstrated that Wife's actions constituted a "failure to exercise due diligence" merely based on the passage of six years. *Id*. Husband's claim warrants no relief.

Based on the issues presented by Husband, we have no cause to disturb the trial court's order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/22/2023