J-A12005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ROBERT L. HORNER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CORIE A. HORNER | |
| | No. 1618 WDA 2016 |

Appeal from the Order Dated October 7, 2016
In the Court of Common Pleas of Fayette County
Civil Division at No(s): 2394 of 2010, G.D.

BEFORE: OLSON, J., SOLANO, J., and RANSOM, J.

MEMORANDUM BY SOLANO, J.:        **FILED SEPTEMBER 22, 2017**

Appellant, Robert L. Horner, appeals *pro se* from the order granting the petition for enforcement and contempt filed by Appellee, Corie A. Horner ("Wife"), and directing Appellant's compliance with the court's equitable distribution order. We affirm.

The trial court summarized the procedural background as follows:

> The within divorce action was filed by [Appellant] on September 7, 2010. A special master was appointed and a Report was filed on November 20, 2013. The Special Master directed [Appellant] to pay to Wife the sum of $15,669.50 within sixty days from the entry of a decree in divorce. ***See***, Special Master's Report, page 38. The Special Master also awarded Wife 30% of the value of four parcels of property and directed the parties to submit the names of appraisers for consideration. ***Id.*** at 37.

> [Appellant] and Wife filed exceptions to the Report. Neither party took exception to the recommendation of the payment of $15,669.50. [Appellant] filed an exception with regards to the value awarded to Wife of the real estate, but this

Court after hearing and discussion, denied the exception and adopted the recommendations of the Special Master. **_See_**, Opinion and Order dated May 6, 2014.

No appeal was taken from the Court's determination of the exceptions and a divorce decree was entered on June 25, 2014. On July 17, 2014, this Court entered an Order approving the Qualified Domestic Relations Order [QDRO] which provided for $15,669.50 to Wife in Equitable Distribution upon [Appellant's] retirement. At the time of entering the QDRO, [Appellant] indicated that his retirement was imminent. Since 2014, [Appellant] has delayed his retirement and stated to the Court that he intends to work six (6) more years. N.T., 10/7/2016, at 5.

Trial Court Opinion, 12/27/16, at 2-3.

On July 19, 2016, Wife filed a "Petition for Contempt and to Enforce the Opinion and Order which Incorporated the Special Master's Report." The trial court conducted a hearing on October 7, 2016, and thereafter entered an order finding Appellant in contempt and directing him to pay $15,669.50 to Wife "on or before November 21, 2016, or in the event payment is not paid . . . a Judgment shall be entered in the amount of $15,669.50 in the Prothonotary's Office of Fayette County against [Appellant] and in favor of Petitioner." The court also ordered the appraisal of the four properties "within ninety (90) days." Appellant filed this timely appeal.

Appellant presents six issues for our review:

1. Whether the trial court erred in invalidating the QDRO, therefore applying [*sic*] the Special Master recommendation of equitable distribution of the marital portion of the Appellant's retirement benefits be ordered and directed from financial resources knowing the Appellant had no such funds available to him outside the funds in his retirement plan, payable within 60 days after the entering of a divorce decree.

- 2 -

2. Whether the trial court erred in assessing the Appellant's consideration of retirement, but due to events which created a financial hardship, where the Appellant had to suspend his plans to retire, the trial court invalidated the QDRO, and awarded the equitable distribution of the Appellant's retirement benefits to [Wife] which are specified and protected in the QDRO under Federal, state statu[t]e, and case law.

3. Whether the trial court erred in its determination [that] the recommendations of the Special Master overrode the QDRO even though the QDRO was approved by both parties and their counsel; the trial court; and the retirement administrator.

4. Whether the trial court abused its discretion in failing to allow the introduction of a correspondence from the Appellant's retirement administrator as to the provisions set forth within the QDRO.

5. Whether the trial court abused its authority by invalidating the QDRO outside its authority which stated the trial court's responsibility was only for the purpose of establishing it or maintaining it as a QDRO.

6. Whether the trial court erred in its discretion to have real estate property the Appellant sold, which had been solely owned by the Appellant prior to the determination of marital property, that said properties were marital assets by the Special Master, therefore be appraised.

Appellant's Brief at 5-6.

In reviewing Appellant's claims:

[O]ur scope of review when considering an appeal from an order holding a party in contempt of court is narrow. We will reverse only upon a showing of an abuse of discretion. This court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt.

*Rhoades v. Pryce*, 874 A.2d 148, 153 (Pa. Super. 2005) (citations omitted), *appeal denied*, 899 A.2d 1124 (Pa. 2006). "The Divorce Code grants trial courts broad powers to enforce orders of equitable distribution, and provides remedies available against one who fails to comply with a court's order of equitable distribution." *Richardson v. Richardson*, 774 A.2d 1267, 1270 (Pa. Super. 2001) (footnote omitted). The court's remedies include an express finding of contempt and the entry of judgment. *See* 23 Pa.C.S. § 3502(e)(1) and (9).

In his first, second, and third issues, Appellant advances the argument that the trial court abused its discretion and "thwarts economic justice" by directing him to pay $15,669.50 within 60 days because he lacks sufficient funds to comply. *See* Appellant's Brief at 19-20. Appellant maintains – without further explanation or detail offered at the hearing or in his brief – that the QDRO should remain in effect because of his "unforeseen financial hardship." *Id.* at 22.

It is undisputed that pursuant to the court's May 6, 2014 order, Wife was awarded the $15,669.50 as her marital share of Appellant's pension, to be paid within 60 days. N.T., 10/7/16, at 2. Thereafter, the parties executed the QDRO with the understanding that Appellant would be retiring, and Wife agreed to wait until the fall of 2014 to receive the funds from Appellant's retirement. *Id.* at 3, 6. Appellant testified that he "did have intentions of retiring that year but . . . had to postpone . . . and  . . . will

work for probably the next six (6) years. So I'm not retiring." ***Id.*** at 4-5.

When asked by the court how long he needed to secure the $15,699.50 that

he has owed Wife since June of 2014, Appellant replied, "I don't have that

money, and I go back to they signed a Quadro [*sic*] after the divorce." ***Id.***

at 13. The court responded:

> You haven't retired. It's not part of the Special Master's [Recommendation]. It was only done because [Wife] felt and you felt that you were going to retire. But since that has [not happened], and it's no longer possible, I would order that the Special Master's [recommendation] has to be upheld. . . . [I]t doesn't matter where the source comes from. If it's a pension interest of a wife to a husband, it does not matter whether or not it comes from the pension. It can come from any source whatsoever. People sometimes want to keep their pensions intact, so they mortgage or they get the money from other sources. . . . You're going to have to [pay]. You're going to have to, or we're going to have to reduce it to judgment [].

N.T., 10/7/16, at 13-14.

The trial court then entered the order directing Appellant to pay to

Wife $15,669.50 within 60 days. The trial court explained:

> [T]he Courts retain jurisdiction regarding the "determination and disposition of property rights and interests between spouses." 23 Pa.C.S. §3104(a)(1). As the within appeal derives from an order of equitable distribution, the Court retained jurisdiction to ensure enforcement.
>
> Here, the Special Master's Report directed that [Appellant] shall pay the sum of $15,669.50 within sixty days from the entry of a decree in divorce. This recommendation was upheld despite [Appellant] filing an exception, and became final when neither party filed an appeal and the divorce decree was entered. The Master's recommendation did not specify a source of funds from which payment was to be derived.

> After the divorce decree was entered, [Appellant] negotiated to have the funds derive from his pension citing his imminent retirement. Notably, neither the Special Master's recommendation or this Court's Order on exceptions specifies a source from which the funds are to be derived. Rather, the Court Order explicitly required payment to be made within 60 days' entry of the divorce decree. Finding that [Appellant] evaded the Court Order regarding equitable distribution by entering into a QDRO when he admitted to stating an intention to retire immediately, but then, again self-admittedly, delaying his retirement plans for at least six more years, this Court found [Appellant] in contempt. By Order dated October 7, 2016, to enforce the Order of equitable distribution, the Court directed [Appellant] to pay the sum of $15,669.50 or suffer the entry of civil judgment.

Trial Court Opinion, 12/27/16, at 3-4. Given this record, we find no abuse of discretion by the trial court in exercising it "broad powers to enforce." *Richardson*, 774 A.2d at 1270. Accordingly, Appellant's first three issues are without merit.

In his fourth issue, Appellant claims the trial court abused its discretion by "failing to accept a correspondence from the Appellant's retirement administrator pertaining to the trial court's responsibility, as well as the retirement administrator's responsibility to the QDRO." Appellant's Brief at 26. To the extent that Appellant's claim is that the trial court declined to accept the referenced correspondence as evidence, our review reveals that Appellant never moved to have the correspondence entered into evidence. The portion of the notes of testimony referencing the correspondence reads:

> **COURT**: . . . You haven't retired. [The QDRO]'s not part of the Special Master's [Recommendation]. It was only done because [Wife] felt and you felt that you were going to retire. But since that has defunct [*sic*], and it's no longer possible, I

- 6 -

would order that the Special Master's [Recommendation] has to be upheld.

**APPELLANT**:    And I agree with you, but it's from my pension fund, and I have a correspondence from PSERS to state in reference to this problem and PSERS said they cannot get money from my retirement fund.  My argument is, this is from my retirement fund.  It's not from the sale of a house, it's not from the sale of a car, it's from my retirement – from my pension.

**COURT**:        Well, according to law, again, it doesn't matter where the source comes from.  If it's a pension interest of a wife to a husband, it does not matter whether or not it comes from the pension.  It can come from any source whatsoever.  . . .

N.T., 10/7/16, at 13-14.  There is no other mention of the correspondence in the notes of testimony, and there was no discussion about the correspondence being entered into evidence.  It may be that Appellant's complaint that the trial court failed to "accept" the correspondence means that the trial court failed to agree that the correspondence provided a valid justification for his failure to pay the funds.  If that is his argument, it is without merit, as the trial court explained that "it does not matter" whether the funds were taken from Appellant's pension or from some other source. In either case, there is no merit to Appellant's fourth issue.

In his fifth issue, Appellant's entire argument reads:

The trial court abused its authority by invalidating its previous order as specified in the QDRO, page 3, Section 15, Amendments.  "The Court of Common Pleas of Fayette County, Commonwealth of Pennsylvania, shall retain jurisdiction to amend any DRO based on this Stipulation and Agreement, but only for the purpose of establishing it or maintaining it as a DRO."

Appellant's Brief at 26.

All of Paragraph 15 of the QDRO states:

15. **Amendments.** The Court of Common Pleas of Fayette County, Commonwealth of Pennsylvania, shall retain jurisdiction to amend any Domestic Relations Order based on this Stipulation and Agreement, but only for the purpose of establishing it or maintaining it as a Domestic Relations Order; provided, however, that no such amendment shall require PSERS to provide any type or form of benefit, or any option not otherwise provided by PSERS, **and further provided that no such amendment or right of the Court to so amend will invalidate any existing Order.**

QDRO, 7/8/14, at 3 (emphasis added). The bolded language recognizes that "any existing order" may not be invalidated by an amendment. In this instance, the May 6, 2014 order of equitable distribution, in which the court directed Appellant to pay $15,669.50 to Wife, remained valid. Moreover, Appellant disregards the statutory authority provided to the trial court under the Divorce Code. As noted above, the trial court has jurisdiction and "[p]owers . . . [i]f, at any time, a party has failed to comply with an order of equitable distribution . . . to effect compliance with its order." 23 Pa.C.S. § 3502(e); *see also* 23 Pa.C.S. § 3104(a) (court may retain jurisdiction in property settlement matters). Appellant's fifth issue assailing the trial court's authority thus lacks merit.

In his sixth and final issue, Appellant argues that the trial court erred by ordering the appraisal of marital properties he sold. He states, "the selling price of these two properties that were sold prior to the recommendation of the Special Master, and subsequently the trial court's order, should be used as their value and no appraisals need[ed]."

Appellant's Brief at 28. We may not consider this issue because the October 7, 2016 hearing was limited to Wife's request for enforcement and contempt relative to equitable distribution.

The trial court explained:

> The final issue is a last ditch effort of [Appellant] to not pay Wife her portion of real estate awarded to her and upheld by this Court. The exact issue was decided by Opinion and Order, dated May 6, 2014, and no appeal was taken therefrom. As such, any issue regarding the appraisal of properties or value awarded to Wife therein is not properly before the Court at this time.

Trial Court Opinion, 12/27/16, at 4. The court is correct. In the Special Master's Recommendation adopted by the trial court, Appellant was awarded 70% and Wife was awarded 30% of the four properties, and the parties were directed to select and pay for an appraiser. After the appraisal, Appellant was to pay Wife "the sum of thirty percent (30%) of the value of the properties' combined value as determined by the appraiser." Recommendation of the Special Master, 11/20/13, at 37. Appellant's issue is without merit because he failed to raise it within 30 days of the entry of the parties' divorce decree in June of 2014. *See Campbell v. Campbell*, 516 A.2d 363, 366 (Pa. Super. 1986) (decree distributing marital property is interlocutory; it cannot be reviewed until it has been rendered final by the entry of a decree in divorce), *appeal denied*, 528 A.2d 955 (Pa. 1987); *see also* Pa.R.A.P. 903 (appeal shall be filed within 30 days after the entry of the order).

In sum, we discern no abuse of discretion by the trial court in granting Wife's petition for enforcement and contempt and ordering Appellant's compliance with the terms of the May 6, 2014 order of equitable distribution.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/22/2017