J-A05008-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HEATHER J. DONNELLY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT W. DONNELLY | : | No. 1767 EDA 2020 |

Appeal from the Order Entered August 13, 2020
In the Court of Common Pleas of Bucks County Domestic Relations at
No(s):  No. 201162833

BEFORE:   OLSON, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                        **FILED;  MAY 17, 2021**

Appellant, Heather J. Donnelly, appeals *pro se* from the order entered on August 13, 2020, finding her in violation of a child support order.  We affirm.

The trial court summarized the relevant facts and procedural history of this case as follows:

> On June 20, 2014, [Appellant] and Robert Donnelly (Father) agreed to the entry of a final order in support that resolved their competing claims for filing dependency tax exemptions on behalf of their two minor children.  The agreed order stipulated that:
>
>> Parties shall alternate tax exemptions for the children as follows:  Father to have odd tax filing years and [Appellant] shall have even tax filing years.  Parties to cooperate and sign all documents to effectuate same.
>
> [...T]his support order allocated the rights of both parties to file for a dependency tax exemption on an alternating yearly basis,

---

[*] Former Justice specially assigned to the Superior Court.

with [Appellant] claiming the exemption in even-numbered years and Father in odd-numbered years. The agreement intended to establish fairness that would provide substantial tax relief for both parents.

[Appellant] and Father followed this order for the next five (5) or six (6) years after their agreed order of June 14, 2014 was entered.

In 2020, Father engaged H&R Block to file for the 2019 child tax credit on his federal income tax returns.

\* \* \*

According to Father, H&R Block rejected Father's [request] because [Appellant previously claimed] the 2019 child tax credit. Father was therefore assessed an additional $1,297.00 payment on his 2019 federal income taxes.

\* \* \*

After Father['s child tax credit claim was rejected], he filed a petition for contempt, asserting that [Appellant] violated the[ parties'] June 20, 2014 support order by filing for the child tax credit in an odd-numbered year (2019). Father requested that [Appellant] remit payment [in] the amount of his rejected child tax credit[.] [The trial court] concurred, and, on August 13, 2020, found [Appellant] in [violation of the support order] and [entered an order] direct[ing] [Appellant] to return [$1,297.00] for the child tax credit [to] Father[.]

Because [Appellant] claim[ed] that she was [] of limited financial means, [the trial court] allowed [Appellant] to repay Father in monthly installments which [] continue[d] until her debt obligation to Father [was] satisfied.

Trial Court Opinion, 10/26/2020, at 1-2 (superfluous capitalization, internal quotations, and record citations omitted).[1] This appeal resulted.[2]

Before examining Appellant's claims, we first consider our jurisdiction over this appeal. *See K.M.G. v. H.M.W.*, 171 A.3d 839, 841 (Pa. Super.

---

[1] In his petition for contempt, Father also sought reimbursement of $1,130.66 for the overpayment of child support to Appellant because one of the parties' children became emancipated. The amount is confirmed by Bucks County records and, accordingly, the trial court ordered repayment to Father. This aspect of the order challenged on appeal is not currently at issue. *See* Trial Court Opinion, 10/26/2020, at 1. The trial court's August 13, 2020 order thus directed Appellant "to pay Father the amount of $2,477.66" without distinguishing between the overpayment due to emancipation ($1,130.66) and the lost child tax credit ($1,297.00). The trial court entered an order on September 18, 2020, amending the August 13, 2020 order to accurately reflect the two separate payments Appellant owed to Father. More specifically, the amended order states:

> [Appellant] is to pay Father the sum of $2,427.66, which represents the amount [Appellant] received on her 2019 IRS return as a child tax credit ($1,297[.00]), plus the over payment by Father from the parties' support obligation ($1,130.66) which existed upon the termination of the order due to the emancipation of [a] child on [June 16, 2020].

Trial Court Order, 9/15/2020. Although the trial court amended its order after Appellant perfected an appeal, it was proper to do so. *See* Pa.R.A.P. 1701(b)(1) (after an appeal is taken a trial court may only correct formal errors in the order on appeal). Moreover, we note that Appellant does not challenge the trial court's determination regarding the $1,130.66 emancipation overpayment.

[2] Our review of the certified record and trial court docket confirms that Appellant filed a timely, *pro se* notice of appeal on September 11, 2020. As discussed briefly above, after Appellant filed her notice of appeal, the trial court entered an order on September 18, 2020 amending its prior August 13, 2020 order. On September 15, 2020, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on October 13, 2020. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on October 26, 2020.

2017) ("This Court may examine appealability *sua sponte* because it affects our jurisdiction over the matter."). On October 19, 2020, concerned that the order appealed from was not final and appealable, this Court entered a *per curiam* order directing Appellant "to show cause [] why this appeal should not be quashed/dismissed." *Per Curiam* Order, 10/19/2020. This Court noted that while the order appealed from was "entitled a contempt order[,]" it did "not appear that the order found [A]ppellant in contempt nor [did] it appear that the trial court awarded sanctions" and it was unclear whether the trial court's order directed "specific performance." **Id.**, *citing* **Genovese v. Genovese**, 550 A.2d 1021 (Pa. Super. 1988) (an order of contempt is final and appealable when the order contains a present finding of contempt and imposes sanctions); **Rhoades v. Pryce**, 874 A.2d 148 (Pa. Super. 1988) (*en banc*) (an award of counsel fees is a sufficient sanction to render the order appealable); **Richardson v. Richardson**, 774 A.2d 1267 (Pa. Super. 2001) (adjudication of contempt, with a directive to specifically perform without sanctions, is interlocutory and not appealable). Appellant filed a timely *pro se* response. On November 2, 2020, this Court entered a *per curiam* order discharging the rule to show cause, but advised Appellant that "the issues may be revisited by the panel assigned to decide the merits of this case." *Per Curiam* Order, 11/2/2020.

We have stated:

Generally, "[a]n appeal may be taken only from a final order, unless otherwise permitted by rule or statute." **Rhoades**[, 874 A.2d at 151–153]; Pa.R.A.P. 341(a). "A final order is one that

- 4 -

disposes of all the parties and all the claims, is expressly defined as a final order by statute, or is entered as a final order pursuant to the trial court's determination." **Stahl v. Redcay**, 897 A.2d 478, 485 (Pa. Super. 2006)[, *quoting **In re N.B.**,* 817 A.2d 530, 533 (Pa. Super. 2003), *citing* Pa.R.A.P. 341(b)(1)–(3)].

**K.M.G.**, 171 A.3d at 842.

"This Court has often stated that an order of contempt is not appealable if sanctions were not imposed." **Id.** However, in **K.M.G.**, we recognized that "[t]he lack of sanctions does not change the fact that [a] contempt order [may] plainly dispose[] of all claims and all parties." **Id.** We further noted that "[a]lthough this Court has often repeated the refrain that sanctions must be imposed before an order is final and appealable, [] there is often more nuance to the cases beyond a mere lack of sanctions." **Id.**

This Court explained, in detail:

In most of the cases, it is clear that either the order did not make a present finding of contempt, or revealed that the trial court contemplated further proceedings, thereby failing to meet the finality requirement of disposing of all claims and all parties. **See Takosky** [**v. Henning**, 906 A.2d 1255,] 1255 [(Pa. Super. 2006)] (holding indirect criminal contempt order was not final because order indicated that sentencing would be held at a future time, and, therefore, punishment phase of matter had not yet been determined); **Sargent v. Sargent**, 733 A.2d 640, 641 (Pa. Super. 1999) (holding order was not final because "threatened sanction of imprisonment may or may not be imposed in the future depending on whether [a]ppellant pays the past due support"); **Kenis v. Perini Corp.**, 682 A.2d 845, 848 (Pa. Super. 1996) (holding order was not final because order merely stated that court may hold appellant in contempt and impose daily fine in the future if appellant did not hand over file as ordered); **Genovese**, 550 A.2d at 1022–[10]23 (holding order requiring appellant to pay child support "or be held in contempt" was not final because it did not impose present finding of contempt or order a sanction); **Rulli v. Dunn**, 487 A.2d 430, 431 (Pa. Super. 1985) (holding order was

not final because it ordered appellant to comply with order within ten days or face sanctions in the future); **McManus v. Chubb Grp. of Ins. Companies**, 493 A.2d 84, 86 (Pa. Super. 1985) (holding that appellant was "not out of court" until "threatened sanction" in the form of dismissal of action actually was imposed); **Guisler v. Alexander**, 453 A.2d 4, 4–5 (Pa. Super. 1982) (holding show-cause order was not final because it simply ordered a hearing to determine whether a party should be held in contempt); **Brodsky v. Philadelphia Athletic Club, Inc.**, 419 A.2d 1285, 1286–[12]88 (Pa. Super. 1980) (holding order was not final because chancellor merely threatened to hold party in contempt and issue jail time and fine in future if a decree was not performed); **Cedar Valley Civic Ass'n v. Schnabel**, 362 A.2d 993, 994 (Pa. Super. 1976) (holding order was not final because term of imprisonment imposed after contempt finding was stayed to permit appellant to post a bond to ensure compliance with court's previous orders).

In other cases, this Court quashed the appeal because the contempt order merely re-ordered a party to do what the party was already obligated to do *via* a prior order (the hoary writ of "we really mean it"), but neither specifically discussed Rule 341 nor indicated whether the order disposed of all parties and claims. **See In re Koll**, 457 A.2d 570, 570–71 (Pa. Super. 1983) (quashing contempt order which reissued bench warrant ordering appellant to appear before a grand jury); **Hester v. Bagnato**, 437 A.2d 66, 67 (Pa. Super. 1981) (holding order adjudicating appellant in contempt but giving appellant opportunity to purge himself by paying a settlement sum appellant was previously ordered to pay was not a final order). **See also Rhoades**, 874 A.2d at 153 (stating that "sanctions for contempt cannot simply be a requirement that the contemnor do as directed, *i.e.*, pay arrearages") (interpreting **Sonder v. Sonder**, 549 A.2d 155 (Pa. Super. 1988) (*en banc*) (quashing an order, which adjudicated a party in contempt and ordered specific performance of a prior order, due to lack of imposed sanctions, without discussion of Rule 341(a))).

**Id.** at 842–843.

Upon further review of this matter, we conclude that the order at issue constituted a final order and is properly before us.  Here, as discussed,

Father's motion for contempt, Appellant's defense to the motion, and the trial court's subsequent decision centered solely on interpreting purported changes in federal tax law and their effect on the parties' existing support order. Confronted with Father's petition for contempt, the trial court determined that Appellant was not subject to additional sanctions because her non-compliance with the parties' support order was not willful; instead, the court found that recent changes in federal tax law did not alter the original support order. Trial Court Opinion, 10/26/2020, at 5 (reformed 2017 tax law "properly satisfies [Appellant] and Father's original intention to lower their respective liabilities in alternating tax years."); **see also** N.T., 8/13/2020, at 9 (trial court stating it did not "attribute to [Appellant] any evil motive. She did what she thought was right, but no matter what her motivation was, it's in violation of [the support o]rder.").

While we have quashed appeals where the trial court has held a party in contempt and then merely directed that party to comply with a prior order, that is not the situation we confront in this case. Here, the trial court **never** determined that Appellant willfully violated the support order. To hold one in contempt for failing to comply with a support order, a court must find that the party acted willfully. **See** 23 Pa.C.S.A. § 4345 (Contempt for noncompliance with support order) ("A person who **willfully** fails to comply with any [support] order under this chapter [] may, as prescribed by general rule, be adjudged in contempt.") (emphasis added). Accordingly, despite the fact that Father and the trial court reference contempt in their court filings and

during the proceedings, the crux of this matter focused on interpretation of the parties' existing support order under prevailing law.

Rather than finding Appellant in contempt, the trial court simply interpreted the support order in light of changed circumstances which emerged from the 2017 passage of new federal tax laws. After considering the changes in federal tax law, the court directed Appellant to repay Father for an alleged tax discrepancy (and overpayment due to emancipation). As discussed at length below, the trial court ultimately determined that the parties' original custody order, as drafted in 2014, became ambiguous after 2017 federal tax reform. Accordingly, the trial court was required to interpret the parties' intentions when the original support order was drafted to determine the subsequent effect of the federal tax changes. Because the original support order could no longer be enforced as written, the trial court's order directing Appellant's compliance due to changed circumstances essentially constituted a modification of the original support order. "[O]rders modifying support are final and appealable." **Fortune/Forsythe v. Fortune**, 508 A.2d 1205, 1208 (Pa. Super. 1986). Furthermore, the order appealed from granted the only relief Father requested. After finding that Appellant's competing claims did not warrant relief, the trial court court's order disposed of all the parties' claims.[3] **See** Pa.R.A.P. 341 (Generally, "[a] final order is

_____

[3] Setting aside references to "contempt" made by Father and the trial court, and bearing in mind that the court declined to say that Mother acted in a
*(Footnote Continued Next Page)*

any order that [] disposes of all claims and of all parties."). As such, we conclude that this Court has jurisdiction to entertain Appellant's appeal.

On appeal *pro se*, Appellant presents the following issues for our review:

A.   Is the [trial court] opinion [] dated October 26, 2020 factually consistent with the uncontroverted testimony presented at the contempt hearing?

B.   Did the [trial court] err when[, on September 18, 2020, it amended its original August 13, 2020 order] seven days after the appeal was filed, when such amended order made a substantive change to the underlying order?[4]

C.   Was Appellant [] permitted to claim the federal earned income credit on her 2019 individual income tax return pursuant to the Internal Revenue Code and still be in compliance with the June 14, 2014 support order?

D.   Was there proof [by] a preponderance of evidence that [Appellant's] action in claiming the earned income tax credit in 2019, which the [trial court] found constituted a violation of the June 20, 2014 support order, volitional and done with wrongful intent?[5]

Appellant's *Pro Se* Brief, at 2-3 (complete capitalization omitted).

_____

contumacious manner, we are left to consider whether Mother may appeal from an order that disposed of a discrete, interpretive dispute between the two parties to a support agreement. If we determined that the order appealed from was not a final order, Appellant would lose her right to a review of her claims and the trial court's legal conclusions.

[4]   As discussed at length above, the trial court properly amended its prior order after the appeal was taken, pursuant to Pa.R.A.P. 1701(b)(1), to clarify the two separate amounts owed Father. The amended order did not substantively change the underlying order as alleged by Appellant. This issue lacks merit.

[5]   As noted previously, the trial court did not find Appellant in willful contempt or that her actions were volitational. As such, we need not examine this appellate claim.

Appellant's remaining issues, issues A and C, are related. We will review them together. Essentially, Appellant argues that "the trial court made numerous errors of law regarding the applicable sections of the Internal Revenue Code" as applied to the parties' original child support agreement. *Id.* at 16. More specifically, she claims the trial court "erroneously conflates and confuses" the "tax exemptions for dependent children in 26 U.S.C. Section 152, the earned income tax credit 26 U.S.C. Section 32, and the child tax credit 26 U.S.C. Section 24." *Id.* Citing 26 U.S.C.A. § 32, Mother contends she "is the only person who was permitted to claim the earned income credit [with regard to the parties'] youngest daughter" because the child lived with her for more than half of the taxable year at issue. *Id.* at 17. She claims:

the Internal Revenue Code permits divorced parents to agree to an allocation of dependency exemptions and child tax credits for their dependent children regardless of who has primary physical custody of the dependent children, but the Internal Revenue does not permit divorced parents to agree to allocate the earned income credit to the parent with whom the dependent child resided for less than one-half of the taxable year.

The [support order at issue] only allocates dependency exemptions in alternating years between [] Appellant [] and [] Father. The [s]upport [o]rder is silent about the earned income credit. In order to determine whether the Father, as the noncustodial parent, should be permitted to claim the earned income credit in 2019 an expansive interpretation of this [s]upport [o]rder would be required. Such an expansive interpretation of the [s]upport [o]rder would lead to a result in contravention of the applicable provisions of the Internal Revenue Code. Such expansive interpretation is most certainly manifestly unreasonable.

*Id.* at 18-19. Accordingly, Appellant asserts the trial court erred and requests we vacate the order directing payment to Father.

"In reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the trial judge when reviewing an order [regarding] contempt." *P.H.D. v. R.R.D.*, 56 A.3d 702, 706 (Pa. Super. 2012) (citation omitted). Similarly, "this Court utilizes an abuse of discretion standard when reviewing a child support order." *Clark v. Clark*, 714 A.2d 427, 429 (Pa. Super. 1998) (citation omitted). Likewise, a "trial court's decision regarding the modification of a child support award will not be overturned absent an abuse of discretion, namely, an unreasonable exercise of judgment or a misapplication of the law." *Plunkard v. McConnell*, 962 A.2d 1227, 1229 (Pa. Super. 2008) (citation omitted). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Clark*, 714 A.2d at 429 (internal citations and quotations omitted).

Moreover, when interpreting child support agreements, our Supreme Court has determined:

> In cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. When, however, an

ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.

*Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004) (citations omitted). Finally, "[a] provision of an agreement regarding child support, visitation or custody shall be subject to modification by the court upon a showing of changed circumstances." 23 Pa.C.S.A. § 3105(b).

As the trial court noted, the support order at issue provides, in relevant part:

Parties shall alternate tax exemptions for the children as follows: Father to have odd tax filing years and [Appellant] shall have even tax filing years. Parties to cooperate and sign all documents to effectuate same.

Trial Court Opinion, 10/26/2020, at 1 (record citation omitted).

Ultimately, the trial court determined:

In 1997, the United States Congress enacted the Taxpayer Relief Act, which established the Child Tax Credit as an income tax credit for qualified dependents. *Taxpayer Relief Act of 1997*, 1997 Enacted H.R. 2014, 105 Enacted H.R. 2014, 111 Stat. 788, 105 P.L. 34, 1997 Enacted H.R. 2014, 105. The enactment of the Child Tax Credit was aimed at further reducing tax liability for qualified individuals and to match the needs of growing families that were unable to afford yearly increases in their tax liability. According to the U.S. Congress' Joint Committee on Taxation:

The Congress believed that the individual income tax structure does not reduce tax liability by enough [] to reflect a family's reduced ability to pay taxes as family size increases. I[n] part, this is because over the last 50 years

the value of the dependent personal exemption has declined in real terms by over one third. ***See*** U.S. Congress, Joint Committee on Taxation, JCS-23-97, General Explanation of Tax Legislation Enacted in 1997, December 17, 1997 [at] 6-7.

For the preceding twenty years, the Child Tax Credit and the Dependency Tax Exemptions existed concurrently. In 2017, Congress passed the Tax Cuts and Jobs Act of 2017, 115 P.L. 97, 131 Stat. 2054, 2017 Enacted H.R. 1[]. Consequently, a revised version of the Child Tax Credit replaced the Dependency Tax Exemption as a means for parents with dependents to lower their tax liability. The Child Tax Credit provides up to $2,000.00 in tax credit per child for parents of eligible dependents under 17 years of age. ***See*** Tax and Jobs Acts, Sec. 11022. To be classified as a dependent, the child is typically required to have lived with the parent/guardian for over six (6) months prior to the tax filing date. Special provisions allow for the non-custodial parent/guardian to claim the tax credit without meeting the six-month residency requirement. Pennsylvania has codified similar non-custodial provisions *via* Pa.R.CP. 1910.16(f), which the Pennsylvania Supreme Court revised in their January 1, 2019 Support Guideline update. The Rule sets forth that:

> "In order to maximize the total income available to the parties and children, the trier-of-fact may award, as appropriate, the federal child tax credit to the non-custodial parent, or to either parent in cases of equally shared custody, and order the other party to execute the waiver required by the Internal Revenue Code, 6 U.S.C. § 152(e). The tax consequences associated with the federal child tax credit must be considered in calculating the party's monthly net income available for support."

Pa.R.C.P. 191016-2(f).

This Rule provides non-custodial parents the ability to file for the Child Tax Credit on behalf of their qualified dependents. Pa.R.C.P. 1910.16(f).

Regarding the case in question, the original intention of [Appellant] and Father were to lower their respective tax liabilities by filing for a Dependency Tax Exemption on a yearly alternating basis.

\*　　　\*　　　\*

- 13 -

As previously stated, the Dependency Tax Exemption was replaced in 2017 by the revised Child Tax Credit. Thus, the tax credit is a replacement for the Dependency Tax Exemption and provides greater financial benefits for eligible parents, as neither provision conflicts with the other nor runs contrary to their intended purposes.

Accordingly, the Child Tax Credit properly satisfies [the parties'] original intention to lower their respective tax liabilities in alternating years. Under Pa.R.C.P. 190.162(f), the [alternating] filing schedule is enforceable on behalf of Father, even though he is not the primary custodial parent.

In rendering this decision, [the trial court stated it] effectuated the clear intent of the parties as expressed in their [agreed upon] June 20, 2014 [] [s]upport [o]rder.

Trial Court Opinion, 10/26/2020, at 3-6.

We agree with the trial court's assessment. Initially, we note that while Appellant claims the support order is silent about the child tax credit, the support order was entered in 2014 before the 2017 law was enacted. As the trial court notes, the child tax credit became law in 2017, when it replaced the dependency tax exemption. Because the dependency tax exemption was no longer available to the parties in 2019, a collateral consequence resulting from subsequent changes in law, the original support order was rendered ambiguous. Hence, the trial court was permitted to determine the parties' intent when the support order was entered. On appeal, Appellant does not challenge the trial court's conclusion that the parties clearly intended to lower their respective tax liabilities. Appellant also does not challenge the trial court's reliance on the 2017 Tax Cuts and Jobs Act. Furthermore, the trial court recognized that it could allocate the child tax credit to Father pursuant

to Pa.R.C.P. 1910.16-2(f). Appellant does not assail the trial court's reliance upon Rule 1910.16-2(f). Upon review of applicable law, we discern no trial court error. Moreover, assuming the current order constitutes a modification of parties' original support order, it was proper upon the trial court's finding of changed circumstances. Accordingly, for all the foregoing reasons, Appellant is not entitled to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/17/21