J-A28030-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| PATRICIA A. REESE, SAMANTHA SNYDER, AND TERRANCE SNYDER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1716 EDA 2024 |
| JACY COLON, AND RAYMOND GARBER | : | |
| | : | |

Appeal from the Order Entered June 6, 2024
In the Court of Common Pleas of Carbon County
Civil Division at No:  22-2518

BEFORE:  PANELLA, P.J.E., STABILE, J., and NICHOLS, J.

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 12, 2025**

Patricia A. Reese ("Paternal Grandmother"), with her daughter, Samantha Snyder ("Aunt"), and son-in-law, Terrance Snyder ("Uncle") (collectively, "Appellants"), appeal from the June 6, 2024 custody order involving the female child, R.C. ("Child"), born in January of 2022.  The order on appeal modified an existing agreed-upon order between Appellants and Child's biological parents, Jacy Colon ("Mother") and Raymond Garber ("Father") (collectively, "Parents"), and awarded Parents sole legal and primary physical custody.  We affirm.

At issue in this appeal is whether the trial court abused its discretion in concluding that Appellants failed to prove by clear and convincing evidence

that retaining their custody awards under the existing agreed-upon order was in Child's best interest.

The trial court thoroughly recounted the factual and procedural history of this case in its opinion pursuant to Pa.R.A.P. 1925(a), which the record evidence supports. As such, we adopt it herein. *See* Trial Court Opinion, 8/13/24, at 1-9. We recite those facts relevant to this disposition, as follows.

Appellants[1] became involved with Child after her discharge from the hospital following birth because Parents[2] had become homeless and had a history of substance abuse.[3] Specifically, Father moved with Child into Paternal Grandmother's home in February of 2022. *See id.* at 2 (citations to record omitted). Mother was then participating in an inpatient drug and alcohol treatment program, which she successfully completed. *Id.* Mother

_____

[1] Paternal Grandmother lived separate and apart from Aunt and Uncle, a married couple, during all times relevant to this appeal.

[2] Parents' relationship spanned ten years at the time of the subject proceeding. N.T., 6/4/24, at 142.

[3] The record reveals that Mother was convicted of a crime in Bucks County, Pennsylvania, involving possession of a controlled substance, and she received a sentence of eighteen months' probation. *See* N.T., 4/19/24, at 11. In October of 2022, the Bucks County Adult Probation Office transferred supervision of Mother's case to Carbon County. Mother fully and successfully completed her probation on March 15, 2024. *Id.* at 12.

Father was convicted of a crime involving driving under the influence of a controlled substance, and he was sentenced to six months' probation. *Id.* at 17-18. Father likewise fully and successfully completed his probation on a date unspecified in the record, but prior to the subject proceedings. *Id.*

moved into Paternal Grandmother's home in September of 2022. *Id.* at 3. Parents equally shared in Child's care with Paternal Grandmother while living with her. *Id.* at 3-5.

By December of 2022, Father's relationship with Paternal Grandmother deteriorated, and he "was evicted from [Paternal] Grandmother's home." *Id.* at 4 (citations to record omitted). As a result of their "falling out," Paternal Grandmother filed a Petition for Protection from Abuse ("PFA") against Father on December 12, 2022, alleging that Father threatened her. *Id.* at 3 (citations to record omitted). On December 23, 2022, upon agreement, the court issued a one-year PFA order against Father "without any finding of abuse" and protecting only Paternal Grandmother, and not Child. *Id.* at 3, n.1.

Similarly, on February 23, 2023, Paternal Grandmother "kicked Mother out of her home claiming she was unfit to care for Child." *Id.* at 5 (citations omitted). Child remained with Paternal Grandmother, who then began to equally share physical custody of Child with Aunt and Uncle. *Id.* Prior to that, Aunt and Uncle "would ask to spend several days at a time with" Child, which Parents allowed. *Id.* at 3.

Appellants commenced the underlying custody action on December 16, 2022, alleging that they had standing pursuant to 23 Pa.C.S.A. §§ 5324 and 5325 and requesting primary physical custody.[4] *See id.* at 4. Parents did not

_____

[4] Section 5324 of the Custody Act, 23 Pa.C.S.A. § 5324, provides as follows.
*(Footnote Continued Next Page)*

_____

**§ 5324. Standing for any form of physical custody or legal custody.**

The following individuals may file an action under this chapter for any form of physical custody or legal custody:

**(1)** A parent of the child.

**(2)** A person who stands in loco parentis to the child.

**(3)** A grandparent of the child who is not in loco parentis to the child:

**(i)** whose relationship with the child began either with the consent of a parent of the child or under a court order;

**(ii)** who assumes or is willing to assume responsibility for the child; and

**(iii)** when one of the following conditions is met:

**(A)** the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);

**(B)** the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

**(C)** the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

**(4)** Subject to paragraph (5), an individual who establishes by clear and convincing evidence all of the following:

**(i)** The individual has assumed or is willing to assume responsibility for the child.

*(Footnote Continued Next Page)*

file an answer, counterclaim, or preliminary objections. During the conciliation conference in January of 2023, Appellants, through counsel, and Parents, acting *pro se*, entered into an agreement which the court docketed and entered as a final order on February 28, 2023 ("existing order").

The existing order awarded Appellants – collectively – sole legal custody. Paternal Grandmother was awarded primary physical custody, and Aunt and Uncle partial physical custody. The court aptly summarized Parents' individual custody awards as follows.

> Mother was to have partial physical custody "on an open and reasonable basis by agreement with Paternal Grandmother as long as she resides with Paternal Grandmother," with the proviso that if Mother changed her residence, custody would remain at the residence of Paternal Grandmother. Father was to have partial physical custody supervised by [Aunt and Uncle] at least once a week for no less than one hour a week at "such times to be arranged between Father and [Aunt and Uncle]."

_____

> **(ii)** The individual has a sustained, substantial and sincere interest in the welfare of the child. In determining whether the individual meets the requirements of this subparagraph, the court may consider, among other factors, the nature, quality, extent and length of the involvement by the individual in the child's life.

> **(iii)** Neither parent has any form of care and control of the child.
> . . .

23 Pa.C.S.A. § 5324; **see also** 23 Pa.C.S.A. § 5325 (Standing for partial physical custody and supervised physical custody) (providing when grandparents and great-grandparents may file an action for partial physical custody or supervised physical custody).

- 5 -

*Id.* at 4-5; *see also* Existing Order, 2/28/23, at ¶¶ 2, 6-9.  The court found that Parents "believed this arrangement was to be temporary — until they could get back on their feet and find stable housing — at which time custody of [Child] would be returned to them, and that, in the *interim*, Mother would continue caring for [Child] in [Paternal] Grandmother's home."  Trial Court Opinion, 8/13/24, at 5 (citing N.T., 4/19/24, at 28, 36-37; N.T., 6/4/24, at 74, 110, 224-225).

Pursuant to the existing order, Father exercised supervised custody of Child in the home of Aunt and Uncle, but only until the summer of 2023, when Aunt and Uncle "ended these visits in their entirety . . . after [telling] Father they intended to relocate to South Carolina with Paternal Grandmother and take Child with them; Father opposed the relocation with [Child]. *Id.* at 6 (citing N.T., 4/19/24, at 53; N.T. 6/3/24, at 151-152).  "Additionally, [Uncle] claimed Father threatened to harm him, which Father denied."  *Id.* (citing N.T., 4/29/24, at 52; N.T., 6/4/24, at 152, 170-271, 175, 208-209; 213-218).

With respect to Mother's partial physical custody award, Appellants did not adhere to the existing order at any time inasmuch as Paternal Grandmother forced Mother to leave her home after the parties had agreed upon the existing order, but before it was entered on the court docket.  The trial court explained:

> After Mother was forced to leave Paternal Grandmother's home, because she was no longer welcome in the home, the only time she was permitted to see [Child] was approximately once or twice a week at [Aunt's and Uncle's] home for two to three hours each

time, supervised. [Paternal] Grandmother and [Aunt and Uncle] stopped these visits in their entirety on October 31, 2023, Halloween, when [Aunt and Uncle] claimed Mother told Father [that Aunt and Uncle] would be taking Child trick-or-treating and Father suddenly appeared to see Child unbeknownst to Mother.

*Id.* at 6 (citations to record omitted).

On November 17, 2023, Parents, through counsel, filed a petition to modify the existing order, wherein they requested legal custody and primary physical custody. Parents alleged that they are "gainfully employed" and are renting an apartment in Tamaqua, in Schuylkill County, Pennsylvania. Petition to Modify, 11/17/23, at ¶¶ 15-16. In response, on December 20, 2023, Appellants filed an answer and counterclaim seeking to maintain sole legal and primary physical custody, and to relocate with Child to Myrtle Beach, South Carolina. Appellants also filed a notice of proposed relocation on December 20, 2023, to which Parents filed a counter-affidavit objecting to the relocation.

On January 12, 2024, Parents further filed a contempt petition against Appellants. The court summarized one allegation, in part, "that notwithstanding thirty-two times between October 31, 2023, and December 27, 2023, when Mother had asked to see [Child], her requests were either denied or ignored." Trial Court Opinion, 8/13/24, at 7; *see also* Petition for Contempt, 1/12/24, at ¶ 41. Similarly, Parents alleged that Father "has not been receiving any supervised visitation at [Aunt's and Uncle's] residence nor has he been requested by [Aunt and Uncle] to take a home drug test to

preclude any visitations in violation of paragraph 9 of the custody order." Petition for Contempt, 1/12/24, at ¶ 44.

Further, in their contempt petition, Parents again averred that they are "gainfully employed" and have "stable housing" in an apartment in Tamaqua. *Id.* at ¶¶ 19-20. Parents also averred that they are "clean and sober," and specifically pleaded that Mother has been sober since May of 2022. *Id.* at ¶¶ 21-24.

The evidentiary hearing commenced on April 19, 2024, at which time the parties' counsel agreed to consolidate Parents' petitions — to modify the existing order and for contempt — with Appellants' request to relocate. Parents presented the testimony of Jillian Fittos, the Carbon County Adult Probation officer who supervised Parents during their probationary periods, discussed *supra*. With respect to the conditions of Mother's probation, Ms. Fittos testified that Mother was required to submit to random urine screens; maintain contact with her probation officer; and commit no further crimes, *inter alia*. **See** N.T., 4/19/24, at 12. Ms. Fittos testified that Mother's probation successfully ended on March 15, 2024, without any probation violations, including but not limited to, any positive illegal drug test results. *Id.* at 12-13. Likewise, Ms. Fittos testified that, to the best of her knowledge, Father did not have any probation violations, including any positive random illegal drug test results, *inter alia*. *Id.* at 16.

In addition, Mother's testimony on direct examination began on April 19, 2024, which was continued until the next hearing on June 4, 2024. At the conclusion of the April 19th hearing, the court stated that Parents "haven't seen [C]hild since October of last year until now in person." N.T., 4/19/24, at 77-78. The court determined that awarding Parents supervised visits was necessary pending the conclusion of the evidentiary hearing and a final custody order. Mother offered her former work manager, Lisa Richardson, as the supervisor. *See id.* at 81-82. Ms. Richardson testified and confirmed that she was willing to supervise Parents' visits with Child, then twenty-seven months old, in Parents' apartment in Tamaqua. *See id.* at 86-87. The court scheduled visits supervised by Ms. Richardson, pending further order, every Wednesday and Friday, starting on April 24th, from 11:00 a.m. to 3:00 p.m. *See id.* at 90-92. The court entered an *interim* order to this effect on April 23, 2024.

On June 3, 2024, one day before the court reconvened the evidentiary hearing, Appellants filed a petition for special relief wherein they requested Parents' physical custody be supervised only by a "professional." Petition for Special Relief, 6/3/24, at ¶ 9. This additional request was pending before the trial court on June 4, 2024. Mother completed her direct testimony and cross-examination at that time, and Father testified in full. Appellants presented the testimony of Paternal Grandmother and Uncle. At the conclusion of the

evidence, the trial court ordered the parties to return to court on June 5, 2024, for its rulings on the petitions.

The court delineated its factual findings on the record in open court on June 5, 2024. *See* N.T., 6/5/24, at 2-13. Next, the court assessed the requisite custody and relocation factors pursuant to the Custody Act, 23 Pa.C.S.A. §§ 5328(a) and 5337(h). *See id.* at 13-33. After considering the statutory factors, the court addressed *sua sponte* whether Appellants stood *in loco parentis* to Child.[5] *See id.* at 33-34. The court then issued its rulings on the petitions, which it memorialized by separate orders dated and entered on June 6, 2024. *See id.* at 33-37. The court aptly summarized the orders, as follows.

> [The court] granted primary physical custody of [Child] to [Parents] with a graduated period of transition[;] [Parents] were awarded legal custody[;] and Paternal Grandmother received partial physical custody. By orders of the same date, we denied [Appellants'] counterclaim to maintain primary custody, for sole

_____

[5] This Court has explained:

> [T]he term *in loco parentis* literally means in the place of a parent. A person stands *in loco parentis* with respect to a child when he or she assumes the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties. Critical to our discussion here, *in loco parentis* status cannot be achieved without the consent and knowledge of, and in disregard of, the wishes of a parent.

***Hunt v. Vardaro***, 317 A.3d 1046, 1050 (Pa. Super. 2024) (internal quotations and citations omitted).

legal custody and relocation, as well as their petition for special relief requesting supervised visits only for [Parents]. Finally, in a separate order dated June 6, 2024, we granted [Parents'] petition for contempt, found [Appellants] in willful violation of the [existing order], and imposed as a purge condition that they comply with the June 6, 2024 custody order granting [Parents] primary physical custody.

Trial Court Opinion, 8/13/24, at 8-9 (capitalization omitted).

Appellants timely appealed on June 25, 2024,[6] and they concurrently filed a concise statement of errors complained of on appeal. The trial court filed its Rule 1925(a) opinion on August 13, 2024.

On appeal, Appellants present the following two questions for review:

A. Whether the trial court committed an error of law and/or abuse of discretion in applying the custody factors and transferring primary custody and legal custody from [Appellants] to [Parents], and ignoring Appellants' stability and good care of Child; Appellants' connection, love, and affinity for Child; Child's connection, love, and affinity for

_____

[6] Appellants filed a single notice of appeal purporting to appeal from the separate orders entered by the trial court on June 6, 2024. This Court issued a show cause order on July 24, 2024, first notifying Appellants that Pennsylvania case law disapproves of one appeal from multiple orders. *See* *Commonwealth v. C.M.K.*, 932 A.2d 111, 112-113 (Pa. Super. 2007) (citing *General Electric Credit Corp. v. Aetna Casualty & Surety Co.*, 263 A.2d 448, 452-453 (Pa. 1970) (holding that one appeal from several judgments is discouraged as unacceptable practice and stating that our Supreme Court has quashed such appeals where no meaningful choice between them could be made)). Second, we directed Appellants to show cause why their appeal from the contempt order should not be quashed as interlocutory and not appealable because it did not impose sanctions. *See Richardson v. Richardson*, 774 A.2d 1267 (Pa. Super. 2001) (adjudication of contempt, with a directive to specifically perform, without sanctions, is interlocutory and not appealable). Appellants failed to respond. On August 9, 2024, this Court quashed the appeal from the contempt order and directed that this appeal proceed solely as an appeal from the June 6, 2024 custody order.

Appellants; [Parents]' abuse and aggressive acts toward Appellants; [Parents]' history of drug use; [Parents]' failure to maintain a consistent presence in the life of Child; [Parents]' failure to maintain stable employment; [Parents]' criminal convictions and [Protection from Abuse ("PFA")] orders; and [Parents]' infrequent periods of custody of Child?

B. Whether the trial court committed an error of law and/or abuse of discretion in its determination of Appellants' standing, specifically by failing to account for [Parents'] waiver of standing, by conducting a *sua sponte* analysis of standing, and further, by concluding that Appellants lacked standing in direct opposition to its own factual conclusions?

Appellants' Brief at 1 (unpaginated).[7]

We review Appellants' issues according to the following scope and standard of review:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.
>
> *R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting *Bovard v. Baker*, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

---

[7] On August 9, 2024, this Court granted the request of Parents' trial counsel to withdraw as counsel, and this Court's docket was amended to reflect that Parents were proceeding *pro se* in this appeal. Parents did not file an appellee brief.

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.
>
> **R.M.G., Jr., supra** at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. **Ketterer v. Seifert**, 902 A.2d 533, 539 (Pa. Super. 2006).

**A.V. v. S.T.**, 87 A.3d 818, 820 (Pa. Super. 2014).

We have explained, "It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . ." **King v. King**, 889 A.2d 630, 632 (Pa. Super. 2005) (citation omitted). This Court has recognized that "the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record." **Ketterer,** 902 A.2d at 540 (citation omitted).

With respect to custody cases, the primary concern is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." **Saintz v. Rinker**, 902 A.2d 509,

- 13 -

512 (Pa. Super. 2006) (citing **Arnold v. Arnold**, 847 A.2d 674, 677 (Pa. Super. 2004)).

Child custody actions are governed by the Child Custody Act ("Act"), 23 Pa.C.S.A. §§ 5321-5340. In this case, the trial court was required to consider Child's best interests pursuant to the custody factors set forth in Section 5328(a) and the relocation factors in Section 5337(h), which provide as follows.

**§ 5328. Factors to consider when awarding custody.**

**(a)** *Factors.* – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).[8]

_____

[8] Our General Assembly amended Section 5328(a) by "Act of April 15, 2024, P.L. 24, No. 8 (known as 'Kayden's Law')," and it became effective on August 13, 2024. *Velasquez v. Miranda*, 321 A.3d 876, 886 n.6 (Pa. 2024). Because the subject proceeding occurred before the effective date of Kayden's Law, the amendment did not apply in this case.

**§ 5337.  Relocation.**

. . .

**(h) Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h); *see also A.M.S. v. M.R.C.*, 70 A.3d 830, 836 (Pa. Super. 2013) (stating that, when making a decision on relocation that also involves a custody decision, "the trial court must consider all ten relocation factors and all sixteen custody factors" outlined in the Act.).

This Court has explained that all of the factors listed in Section 5328(a) and Section 5337(h) are required to be considered by the trial court when entering a custody order. *A.V.*, 87 A.3d at 822 (citation omitted); *see also id*. at 823 (stating that Section 5323(d) applies to cases involving custody and relocation and "requires the trial court to set forth its mandatory assessment of the [. . .] factors prior to the deadline by which a litigant must file a notice of appeal.") (citations omitted)).

Turning to the merits of this appeal, we begin our review with Appellants' second issue wherein they argue that the trial court erred in "examining the issue of Appellants' standing, *sua sponte*" on the record in open court on June 5, 2024. Appellants' Brief at 43. Specifically, Appellants assert that Parents waived the issue of standing because they never raised it at any point in the custody litigation. *See* Appellants' Brief at 44-46 (citing *In Re Nomination Petition of deYoung*, 903 A.2d 1164, 1168 (Pa. 2006) (the High Court reiterating that it "has consistently held that a court is

prohibited from raising the issue of standing *sua sponte*. Whether a party has standing to maintain an action is not a jurisdictional question.") (some internal quotations and citations omitted)). For the following reasons, Appellants are not entitled to relief.

Initially, our review of the record confirms that Parents did not raise the issue of Appellants' standing in the underlying custody matter. Therefore, the trial court erred in raising it *sua sponte*. **See In re Adoption of Z.S.H.G.**, 34 A.3d 1283, 1288 (Pa. Super. 2011) (explaining that the High Court in **In re Nomination Petition of deYoung**, **supra**, overruled **In re Adoption of W.C.K.**, 748 A.2d 223 (Pa. Super. 2000),[9] "*sub silentio* and expressly rejected the proposition that standing is a jurisdictional prerequisite to a court having subject matter jurisdiction.").

Nevertheless, Appellants do not argue, and the record does not demonstrate, that Appellants suffered prejudice as a result of the court's error. At best, Appellants assert that the trial court's on-the-record analysis

_____

[9] In **W.C.K.**, **supra**,

> this Court espoused the legal principle that in instances where "our legislature has designated who may bring an action under a particular statue, a court does not have jurisdiction over the action unless the party bringing the action has standing." That case further explained that since a challenge to standing in this context implicates subject matter jurisdiction, it could never be waived and can be raised by the court *sua sponte*. **W.C.K.**, 748 A.2d at 228.

**In re Adoption of Z.S.H.G.**, 34 A.3d at 1287.

regarding their *in loco parentis* status was "patently offensive" due to the "love and care that they have shown toward Child." Appellants' Brief at 46 (citing N.T., 6/5/24, at 33-34). In this case, as discussed further *infra*, the court treated Appellants as having cognizable rights to physical and legal custody inasmuch as it proceeded to assess the statutory custody and relocation factors in deciding the competing custody claims. In its Rule 1925(a) opinion, the court confirmed that Appellants had standing due to the custody awarded in the agreed-upon existing order. *See* Trial Court Opinion, 8/13/24, at 12, 14-15. As such, we conclude that the trial court's error in raising standing *sua sponte* was without consequence and harmless in this case. *See Grove v. Port Auth. of Allegheny County*, 218 A.3d 877, 890 (Pa. 2019) ("Harmless error exists if the record demonstrates . . . the error did not prejudice the defendant. . . .") (citation omitted).

Turning to their first issue, Appellants argue that the evidence is insufficient to support Parents' award of primary physical custody. *See* Appellants' Brief at 15-36. Appellants' argument relates only to the court's findings under Section 5328(a). Therefore, Appellants have waived any claim regarding the relocation factors delineated in Section 5337(h), and we do not consider them. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465-466 (Pa. Super. 2017) (citation omitted) (reiterating that a claim is waived where an appellate brief fails to provide any discussion of the claim with citation to relevant authority). Appellants are not entitled to relief on this claim.

Before addressing the particulars of their argument, we observe that the trial court recognized Appellants' standing did not "alter their role as third-party challengers to [Parents]' request for primary physical custody, or preclude an award of custody to them provided they are able to satisfy both the burden of production and persuasion by clear and convincing evidence." Trial Court Opinion, 8/13/24, at 15. Third parties are "persons other than the natural parents." *McDonel v. Sohn*, 762 A.2d 1101, 1105 (Pa. Super. 2000). The Act provides that, in an action between a parent and a third party, "there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence." 23 Pa.C.S.A. § 5327(b); *see also* Trial Court Opinion, 8/13/24, at 13. This Court has defined "clear and convincing evidence" as "evidence that is so clear, direct, weighty, and convincing so as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *M.J.S. v. B.B. v. B.B.*, 172 A.3d 651, 660 (Pa. Super. 2017) (citations and internal quotation marks omitted). This Court has explained the burden of proof in custody cases between parents and third parties, as follows.

> "[E]ven before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the biological parents' side." *V.B.* [*v. J.E.B.*, 55 A.3d 1193,] 1199 (Pa. Super. 2012) (quoting *Charles* [*v. Stehlik*, 744 A.2d 1255, 1258 (Pa. 2000)]). When making a decision to award **primary** physical custody to a nonparent, the trial court must "hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and

- 20 -

down on the third party's side." *Id.* (quoting *McDonel v. Sohn*, 762 A.2d [at] 1107)).

These principles do not preclude an award of custody to the nonparent but simply instruct the trial court that the nonparent bears the burden of production and the burden of persuasion, and the nonparent's burden is heavy. *Jones v. Jones*, 884 A.2d 915, 918 (Pa. Super. 2005). It is well settled, "[w]hile this Commonwealth places great importance on biological ties, it does not do so to the extent that the biological parent's right to custody will trump the best interests of the child. In all custody matters, our primary concern is, and must continue to be, the well-being of the most fragile human participant—that of the minor child." *Charles*, 744 A.2d at 1259. "Once it is established that someone who is not the biological parent is *in loco parentis*, that person **does not need to establish that the biological parent is unfit**, but instead must establish by clear and convincing evidence that it is in the best interests of the children to maintain that relationship or be with that person." *Jones*, 884 A.2d at 917 (emphasis in original).

*R.L.* [*v. M.A.*, 209 A.3d 391, 396 (Pa. Super. 2019)] (emphasis in original).

*Taylor v. Smith*, 302 A.3d 203, 208-209 (Pa. Super. 2023).

On appeal, Appellants contend that the trial court's award of primary physical custody to Parents is unreasonable, but they do so without any reference to their burden of proof as third parties in this case. Rather, Appellants analyze the evidence under a burden of proof equal to Parents. *See* Appellant's Brief at 16 (citation omitted) (cleaned up) ("Each parent shares the burden of proving, by the preponderance of the evidence, that an award of custody to him or her will serve the best interests of the child.")

Here, the trial court concluded that Appellants' burden "has not been met in this case." Trial Court Opinion, 8/13/24, at 15 (footnote omitted). Of

particular note is the court's finding with respect to Parents' history of drug abuse and their mental health condition which implicates Section 5328(a)(14) and (15). The trial court found, as follows.

While [Appellants] contend that Mother and Father are unfit parents, unable to provide proper care to [Child] because of their addiction to drugs and unable to provide a safe and stable home for [Child], this is contrary to the credible evidence of record. Without question, Mother was addicted to opioids at the time of Child's birth. (N.T., 4/19/24, at 26). Since then, however, Mother has made remarkable progress. For more than two years she has attended drug and alcohol counseling and been compliant with the methadone maintenance program provided by the Allentown Comprehensive Treatment and is expected to be off of methadone within a year. (*Id.* at 74-76; N.T., 6/4/24, at 110-111, 129). While being supervised on probation by the Carbon County Adult Probation Office, beginning on October 13, 2022, and ending on March 15, 2024, for an 18-month sentence she received in Bucks County for possession of a controlled substance, she never once violated the terms of supervision and never tested positive on random drug tests other than for medications she was prescribed. (N.T., 4/19/24, at 11-14). Mother testified she has been clean for over two years. (N.T., 6/4/24, at 111). Her supervising officer with nineteen years experience testified that Mother was a hard worker, maintained consistent employment, and set as a goal getting her own place, which she accomplished while under supervision. (N.T., 4/19/24, at 11, 20-21). Additionally, she has done well at Ethos[10] where for over a year she has received therapy and been prescribed medication for anxiety and [Attention Deficit Hyperactivity Disorder ("ADHD")]. (N.T., 4/19/24, at 75-76; N.T., 6/4/24, at 110).

Father, who is currently forty-four years old, began using marijuana when he was sixteen years old, denies ever using opioids, and became addicted to methamphetamine approximately three years ago. (N.T., 6/4/24, at 144-145). He attended and completed therapy at Ethos approximately one year ago and claims to have been clean since that time. (*Id.* at 111, 145). Following a conviction for driving under the influence of a

_____

[10] Ethos is a service provider for mental health.

- 22 -

controlled substance, for which Father received a six-month sentence, while on supervision Father was randomly tested with no positive results. (N.T., 4/19/24, at 16-17).

Father continues to receive counseling and prescribed medication from Ethos for depression and ADHD. (N.T., 6/4/24, at 146-147). While we believe Father has taken significant steps in addressing his substance abuse and mental health issues, Father still struggles in this regard, more so than Mother. Notwithstanding this reservation, we also found that Father is sincere in his love for and desire to be active in [Child]'s life and that, with Mother's presence and co-parenting, Father should not be denied the opportunity to be a daily presence in his daughter's life. [Appellants] have failed to prove by clear and convincing evidence either that Mother or Father is unfit, or that placing [Child] in their custody will cause [Child] to be substantially at risk due to parental abuse, neglect, drug or alcohol abuse or mental illness.

Trial Court Opinion, 8/13/24, at 16-18 (cleaned up). The testimonial evidence supports the court's findings, and we discern no abuse of discretion.

In addition, the court explained that its analysis of the custody factors was premised upon finding that Appellants' actions "quickly changed" after reaching the agreement reflected in the existing custody order "from supporting a parent/child relationship between [Child] and her parents to erecting a barrier to that relationship and seeking to estrange [Child] from Mother and Father." Trial Court Opinion, 8/13/24, at 16. The court explained:

[Paternal] Grandmother threw Mother out of her home and kept [Child] from her; [Aunt and Uncle] in response to Father's opposition to their desire to move to South Carolina terminated his contact with [Child]. This despite Mother and Father both clearly wanting to remain active in [Child]'s life and securing employment and a home in which to live with [Child] as a family. (N.T., 6/4/24, at 96-99, 124, 152).

We are particularly troubled by [Appellants]' conduct preventing Mother and Father from spending time with [Child] — for almost

- 23 -

a year in Father's case and close to six months with respect to Mother — notwithstanding Mother's repeated requests to see her daughter. (N.T., 4/19/24, at 63-74; Exhibits D-3 thru 6). On one occasion in July of 2023, when Mother was visiting [Child] at [Aunt and Uncle]'s home and wanted to take [Child] outside to see Father, [Aunt and Uncle] denied this contact. (N.T., 4/19/24, at 53-54). [Appellants]' efforts to alienate [Child] from her parents is particularly evident in their request to relocate to South Carolina with [Child] and effectively sever the parent/child relationship. (N.T., 6/4/24, at 108-110, 157). . . .

*Id.*

Thus, with respect to Section 5328(a)(1) and (8), the court found "that in consequence of decisions that [Appellants] have made, Parents have been denied contact, direct contact with their daughter for significant periods of time. . . ." N.T., 6/5/24, at 16 (cleaned up). Appellants, however, contend on appeal that they were justified in prohibiting Parents' contact with Child. *See* Appellants' Brief at 20-22, 28-29. The trial court rejected this theory based on its determinations regarding the weight of the evidence and the credibility of the parties, which we will not disturb. *See R.M.G., Jr.*, 986 A.2d at 1237. Even if Appellants were justified in prohibiting Parents' contact with Child, the court reasoned that Appellants' conduct had the effect of keeping Child "from her parents," and Appellants did not meet their burden under these custody factors. N.T., 6/5/24, at 21.

With respect to Section 5328(a)(3), (9), and (10), the court found that Parents are capable of performing parental duties and providing for Child's needs, but that "since at least February of 2023, they have not been doing so, again, because they have been excluded and prohibited from doing so" by

Appellants. N.T., 6/5/24, at 17-19, 21-22. We discern no abuse of discretion regarding these custody factors.

Finally, to the extent Appellants contend that the court abused its discretion in not affording greater weight to Section 5328(a)(2) and (13), due to the PFA order that was effective against Father on behalf of Paternal Grandmother from December of 2022, until December of 2023, we discern no abuse of discretion. The court recognized the high conflict between Appellants and Parents. Further, the court acknowledged that most recently, during a custody exchange in May of 2024, the conflict "became visible and physical" between the parties. N.T., 6/5/24, at 23-24. The trial court received conflicting testimony from the parties regarding the incident and reasoned, "who's responsible for that occurring will probably be decided tomorrow in the protection from abuse proceeding. It's not being decided here today." *Id.* at 24. Upon thorough review of the certified record, we discern no abuse of discretion by the court in failing to place determinative weight on these factors inasmuch as there is no evidence of domestic violence in Parents' home or that Parents would pose a safety risk to Child in any way.

In this case, the trial court carefully applied the proper evidentiary standard to the facts of record and thoroughly considered Child's best interests pursuant to Section 5328(a). We discern no abuse of discretion by the court's conclusion that Appellants failed to clearly and convincingly prove that Child's

best interest was served by maintaining their custody awards and denying Parents primary physical custody of Child.  Accordingly, we affirm the order.

Order affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/12/2025